Kelly B. ZANDERS, Plaintiff,

v.

Linzey D. JONES and Sidley & Austin, Defendants.

No. 87 C 9207.

United States District Court, N.D. Illinois, E.D.

Feb. 23, 1988.

Allen Belkin, Shapiro, Turoff, Gisser & Belkin, Cleveland, Ohio, for plaintiff.

John Powers Crowley, Matthew F. Kennelly, Margaret L. Paris, Cotsirilos, Crowley, Stephenson, Tighe & Streicker, Ltd., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

WILLIAM T. HART, District Judge.

Plaintiff Kelly B. Zanders filed this action against Linzey Jones, an attorney, and against Sidley & Austin, defendant Jones's firm, seeking to recover for allegedly false and defamatory statements made about plaintiff in the course of a legal proceeding. Count I of the complaint purports to state a cause of action for defamation; Count II purports to state a claim for this same wrong by alleging that the statements made by defendant Jones violated the stan-dards of professional responsibility applicable to attorneys and thus constituted tortious conduct toward plaintiff. Defendants have moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) on the basis that it fails to state a claim upon which relief can be granted. For the reasons stated below, this motion is granted.

## FACTS

The complaint alleges that defendants, who are engaged in the practice of law, while pursuing the claims of a client against Amtrak, falsely represented to counsel for Amtrak that plaintiff had consulted and cooperated with them in the preparation of the client's claim and had agreed to appear as a witness at any hearing relating to the claim. Plaintiff had previously had two telephone conversations with defendant Jones of Sidley & Austin in April of 1986. According to plaintiff, these conversations related solely to plaintiff's request that defendants consider representing her in certain employment matters involving Amtrak, her former employer. Plaintiff claims that in the course of these discussions she submitted certain documents to defendant Jones for his review; among these documents was a Separation Agreement which had been entered into between plaintiff and Amtrak and which, by its terms, barred plaintiff from assisting any individual having an employment related claim against Amtrak.

At the time plaintiff contacted defendants, defendants were representing another client in a civil rights claim against Amtrak which was then pending before the Illinois Human Rights Commission. Plaintiff alleges that defendants ultimately decided and told her that in view of their representation of this client they would not be able to represent plaintiff. Plaintiff claims that at no time did she discuss with defendant Jones the events of the other case, and that at no time did defendants ever inquire of her whether she would be willing to assist them in their representation of the other client or testify on that client's behalf.

The complaint alleges that defendants nevertheless in August, 1986 submitted to

Amtrak a prehearing document in which they stated that they expected to call plaintiff as a witness on their client's behalf. Plaintiff alleges that in a subsequent telephone conversation between defendant Jones and an attorney for Amtrak, defendant Jones falsely told the Amtrak attorneys that his conversations with plaintiff had taken place in June or July of 1986; plaintiff also alleges that defendant Jones failed to state that plaintiff had never spoken with him regarding the merits of the case or that plaintiff's name had been placed on the witness list without her knowledge or consent. As a result, plaintiff alleges, defendants conveyed an "impression" that plaintiff had agreed to cooperate, in contravention of the terms of her Separation Agreement with Amtrak. Plaintiff complains that as a result of defendant Jones' representations to the Amtrak attorney, plaintiff was sued by Amtrak in Ohio state court for breach of the Separation Agreement. She now seeks recovery for the costs and the distress attendant to the Ohio litigation.

## DISCUSSION

■ In deciding a motion to dismiss, all of the allegations of the complaint must be accepted as true. A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). In this case, however, even assuming the truth of plaintiff's allegations, they do not state a claim for defamation because under Illinois law,[1] anything said or written in the course of a legal proceeding is protected by an absolute privilege. *Bond v. Pecaut*, 561 F.Supp. 1037, 1038 (N.D.Ill.1983), *aff'd*, 734 F.2d 18 (7th Cir.1984); *Defend v. Lascelles*, 149 Ill.App.3d 630, 102 Ill.Dec. 819, 821, 500 N.E.2d 712, 714 (1986); *Thomas v. Petrulis*, 125 Ill.App.3d 415, 80 Ill.Dec. 713, 718, 465 N.E.2d 1059, 1064 (1984); *Libco Corp. v. Adams*, 100 Ill.App.3d 314, 55

Ill.Dec. 805, 806–07, 426 N.E.2d 1130, 1131–32 (1981). "The purpose of the privilege is to secure to attorneys as officers of the court the utmost freedom in their efforts to secure justice for their clients.... It is based on the tenet that conduct which would otherwise be actionable should escape liability because the defendant is furthering an interest of social importance." *Libco, supra* 55 Ill.Dec. at 807, 426 N.E.2d at 1132. The issue of privilege is for the court, the only question being whether the allegedly defamatory statements were made in the course of a legal proceeding. *See Brubaker v. Board of Education*, 502 F.2d 973, 91 (7th Cir.1974), *cert. denied*, 421 U.S. 965, 95 S.Ct. 1953, 44 L.Ed.2d 451 (1975). If they were, they are simply not actionable as a matter of law, even assuming that they are false.

Plaintiff concedes that the allegedly defamatory statements at issue in this case were made in the course of a legal proceeding, but maintains that the privilege nevertheless should not apply here because this case involves allegations of unethical activities by a member of the bar. However, notwithstanding the prohibitions on conduct by lawyers involving dishonestly, fraud, deceit or misrepresentation contained in the Disciplinary Rules of the Illinois Code of Professional Responsibility, the Illinois courts have consistently applied the privilege to false statements made by lawyers no less than to false statements made by others in the course of legal proceedings. *See, e.g., Weiler v. Stern*, 67 Ill.App.3d 179, 23 Ill.Dec. 855, 384 N.E.2d 762 (1978). This reflects a policy determination that regardless of how wrongful the statements are, the ends to be served by permitting the statements in the course of a legal proceeding outweigh the harm that may be done to the reputation of others. *Id.* 23 Ill.Dec. at 856, 384 N.E.2d at 763. Plaintiff argues that the lawyer involved in this case was involved in "duplicitous conduct," and that the public interest will not suffer by requiring him and his law firm to

---

1. Plaintiff alleges that the claim arose in this district. Neither party has suggested that Ohio law applies or is different from Illinois law.

respond in a civil action. The interests to be weighed are not, however, merely those of the particular parties involved in the case, but rather, are those of society as a whole, which benefits from a rule securing absolute freedom of communication in connection with legal proceedings. *See Libco, supra* 55 Ill.Dec. at 807, 426 N.E.2d at 1132.

Plaintiff also argues that if the court is to recognize a privilege at all, it should only be a conditional or qualified one. Plaintiff points out that, at least in other contexts, the determination of whether a qualified privilege applies ordinarily necessitates a close factual inquiry, thus making resolution of the issue on the basis of the pleadings alone inappropriate. The law in Illinois is clear, however, that the privilege applicable to communications made in the course of a legal proceeding is an absolute one, which leaves no room for qualification.[2] Because any statements made by defendant Jones were made in the course of a legal proceeding and thus are absolutely privileged, plaintiff's defamation claim in Count I must be dismissed.

■ Count II of the complaint, which purports to state a claim for the violation by defendants of the Illinois Code of Professional Responsibility,[3] must also be dismissed because there is no "professional responsibility tort" in Illinois. The law is clear in the first instance that the Code does not create or provide the basis for any private right of action. Indeed, the Preliminary Statement to the Code states that "[t]he Code makes no attempt to prescribe either disciplinary procedures or penalties for violation of a Disciplinary Rule, nor does it undertake to define standards of civil liability of lawyers for professional conduct."[4] *See also Flynn v. Dyzwilewski,* 644 F.Supp. 769, 774 n. 2 (N.D.Ill.1986); *Corti v. Fleisher,* 93 Ill.App.3d 517, 49 Ill.Dec. 74, 86, 417 N.E.2d 764, 776 (1981); *Lyddon v. Shaw,* 56 Ill. App. 3d 815, 14 Ill.Dec. 489, 492–94, 372 N.E.2d 685, 688–90 (1978). It would also be incongruous to allow plaintiff to recover under such a novel theory when Illinois law, as discussed above, so clearly denies recovery for the same conduct on a defamation theory because of the absolute privilege applying to communications made in the course of a legal proceeding. The Illinois courts have refused similar attempts to extend tort liability for conduct in the course of legal proceedings. *See Lyddon, supra* 14 Ill. Dec. at 494, 372 N.E.2d at 690; *see also Stopka v. Lesser,* 82 Ill.App.3d 323, 37 Ill. Dec. 779, 781, 402 N.E.2d 781, 783 (1980); *Berlin v. Nathan,* 64 Ill.App.3d 940, 21 Ill.Dec. 682, 688–92, 381 N.E.2d 1367, 1373–77 (1978), *cert. denied,* 444 U.S. 828, 100 S.Ct. 53, 62 L.Ed.2d 36 (1979). Plaintiff cannot therefore be permitted to circumvent the privilege under the guise of a heretofore unrecognized theory of negligence.

■ To the extent that Count II purports to state a claim based purely on negli-

---

**2.** Plaintiff cites a Wisconsin case, *Converters Equipment Corp. v. Condes Corp.,* 80 Wis.2d 257, 258 N.W.2d 712 (1977), where the court refused to apply an absolute privilege because the recipients of the statements had nothing to do with the pending case and were not integrally related to the suit. *Id.* 258 N.W.2d at 716–17. This is distinguishable from the present case where the statements allegedly made to opposing counsel for Amtrak regarded a potential witness.

**3.** Plaintiff alleges that defendants violated Disciplinary Rules 1–102 and 4–101 of the Code. DR 1–102 provides, in pertinent part, that:

(a) A lawyer shall not

\* \* \* \* \* \*

(4) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation; or

(5) engage in conduct that is prejudicial to the administration of justice.

DR 4–101 provides, in pertinent part, that:

(b) ... [A] lawyer shall not knowingly, during or after termination of the professional relationship to his client,

\* \* \* \* \* \*

(2) use a confidence or secret of his client to the disadvantage of the client.

Plaintiff concedes, however, that she never actually entered into an attorney-client relationship with either of the defendants.

**4.** The more recently-enacted (though not yet officially adopted) Model Rules of Professional Conduct of the American Bar Association similarly provide that "[v]iolation of a Rule should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached."

gence, it is likewise insufficient as a matter of law. Plaintiff admits that she did not have an attorney-client relationship with defendants. Actions for negligence must be based on the existence of a duty owed by the defendant to the plaintiff, and in the context of professional negligence for an attorney, this duty is necessarily grounded on the existence of an attorney-client relationship. *Pantone v. Demos*, 59 Ill.App.3d 328, 16 Ill.Dec. 607, 612, 375 N.E.2d 480, 485 (1978). The Illinois courts have declined to expand to non-clients the duties owed by attorneys, reasoning that more expansive liability "would interfere with the undivided loyalty which the attorney owes his client and would detract from achieving the most advantageous position for his client." *Pelham v. Griesheimer*, 92 Ill.2d 13, 64 Ill.Dec. 544, 548, 440 N.E.2d 96, 100 (1982).

■ Although Illinois does recognize a cause of action for plaintiffs who allege that they were intended "third-party beneficiaries" of the attorney-client relationship, *see York v. Stiefel*, 99 Ill.2d 312, 76 Ill.Dec. 88, 93, 458 N.E.2d 488, 493 (1983); *Pelham, supra*, 64 Ill.Dec. at 548, 440 N.E. 2d at 100, this narrow exception to the privity requirement has been carefully circumscribed. In order to invoke the exception, the non-client must allege that the intent of the client to benefit the non-client third party was the *primary or direct purpose* of the relationship. *Pelham, supra* at 547–48, 440 N.E.2d at 99–100. *See also Frymire v. Peat, Marwick, Mitchell & Co.*, 657 F.Supp. 889, 897–99 (N.D.Ill.1987); *Gold v. Vasileff*, 160 Ill. App. 3d 125, 112 Ill.Dec. 32, 34, 513 N.E.2d 446, 448 (1987); *Brumley v. Touche, Ross & Co.*, 139 Ill. App. 3d 831, 93 Ill.Dec. 816, 819–20, 487 N.E.2d 641, 644–45 (1985); *Conroy v. Andeck Resources '81 Year–End, Ltd.*, 137 Ill.App.3d 375, 92 Ill.Dec. 10, 21–22, 484 N.E.2d 525, 536–37 (1985).

Plaintiff cites *Ogle v. Fuiten*, 112 Ill. App.3d 1048, 68 Ill.Dec. 491, 493–95, 445 N.E.2d 1344, 1346–48 (1983), *aff'd*, 102 Ill.

2d 356, 80 Ill.Dec. 772, 466 N.E.2d 224 (1984), where the plaintiffs, as legatees of a will drawn up by the defendant attorney for his client, the testator, sufficiently alleged that the attorney-client relationship had been entered into for their benefit. That case is distinguishable from this one, where plaintiff has not alleged any facts which could conceivably support the conclusion that she was an intended third-party beneficiary of the relationship between defendants and their client.[5]

■ Nor can Count II of the complaint be construed sufficiently to allege a claim for negligent misrepresentation. First, as the Seventh Circuit recently observed in discussing whether an attorney could be liable to a third party for issuing an opinion letter on behalf of his client to induce the third party to make a loan, "merely by labeling a suit as one for negligent misrepresentation rather than professional malpractice will not make the problem of indefinite and perhaps excessive liability, ... go away." *Greycas, Inc. v. Proud*, 826 F.2d 1560, 1563 (7th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 775, 98 L.Ed.2d 862 (1988). For this reason, as the court also noted in *Greycas*, it is not surprising to find that the courts have placed similar limitations on suits for negligent misrepresentation—"so similar that we are led to question whether, as suggested in *HGN Corp. v. Chamberlain, Hrdlicka, White, Johnson & Williams*, 642 F.Supp. 1443, 1452–53 (N.D.Ill.1986), these really are different torts, at least where both grow out of negligent misrepresentations by lawyers." *Greycas, supra* at 1564. *See Penrod v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 68 Ill.App.3d 75, 24 Ill.Dec. 464, 469, 385 N.E.2d 376, 381 (1979). Count II must therefore also be dismissed.

IT IS THEREFORE ORDERED that defendants' motion to dismiss is granted. The Clerk of the Court is directed to enter

---

**5.** Since plaintiff herself admits that defendants turned down the opportunity to represent her precisely *because* her interests might conflict with those of its existing client, she is obviously precluded from contending that the preexisting attorney-client relationship was intended primarily for her benefit.

a judgment order dismissing this case with prejudice and with costs to defendants.