CHARLES SKOPP et al., Plaintiffs-Appellants, v. FIRST FEDERAL SAVINGS OF WILMETTE et al., Defendants-Appellees.

First District (3rd Division)    No. 1—87—3678

Opinion filed September 27, 1989.

Arvey, Hodes, Costello & Burman, of Chicago (Gary L. Starkman, James S. Barber, and Brian D. Vandenberg, of counsel), for appellants.

Sonnenschein, Carlin, Nath & Rosenthal, of Chicago (Robert C. Johnson, David C. Jacobson, and Steven M. Levy, of counsel), for appellees.

JUSTICE WHITE delivered the opinion of the court:

Plaintiffs, Charles Skopp and James Matasso, appeal from orders of the circuit court granting defendants' motion for summary judgment on two counts of the complaint and denying plaintiffs leave to amend the complaint by adding a sixth count.

In 1982, Charles Skopp was vice-president and chief loan officer at Glenview Guaranty Savings and Loan (Glenview). James Matasso was vice-president and chief financial officer at Glenview. In November of that year, Glenview merged with the First Federal Savings and Loan of Wilmette (First Federal). Two months later, in January 1983, plaintiffs' employment was terminated.

In October 1983, plaintiffs filed this action against First Federal, First Federal's president, John Gravee, and First Federal's vice-president, Jerome Maher. In count III of their four-count complaint, plaintiffs alleged that Maher slandered them by stating to Howard Russell and Joseph Jannotta of Jannotta, Bray & Associates, a placement firm hired by First Federal to assist plaintiffs in obtaining other employment, that plaintiffs had been terminated "for cause." Plaintiffs contended that the words "for cause" had a particular meaning in the savings and loan industry and that Russell and Jannotta understood the words to mean that plaintiffs had engaged in positive misconduct.

Count IV accused Gravee of slander in connection with a statement, made during a meeting between First Federal personnel and others. Plaintiffs alleged that during the meeting, Gravee falsely stated that a post-merger investigation had revealed "serious charges of criminal conduct in which Skopp was involved."

Defendants filed motions for summary judgment on counts III and IV of plaintiffs' complaint. In support of their motion for summary judgment on count III, defendants filed affidavits by Jannotta and Russell in which they stated that they did not understand the statement that plaintiffs were terminated "for cause" to mean that plaintiffs had engaged in positive misconduct or corrupt activity and

that they had no specific conception of what terminated "for cause" meant, other than a general understanding that plaintiffs' performance was unsatisfactory to First Federal. In response, Matasso filed an affidavit in which he stated that when he asked Russell what "for cause" meant, Russell asked him, "Did you do something illegal? Did you violate their policies? Were you involved in some for [sic] of chicanery?" In granting defendants' motion for summary judgment on count I, the trial court held that Maher's statement was not actionable because Russell and Jannotta did not understand the statement to be defamatory.

The court also granted summary judgment on count IV after defendants produced evidence that the purpose of the meeting at which Gravee allegedly made the statement about Skopp was to discuss a lawsuit filed against Glenview and after it was revealed that the only other persons present at the meeting were Richard Wilde, then president of Glenview; Dominic Cannon, a member of First Federal's board of directors; two attorneys from Sonnenschein Carlin Nath & Rosenthal, the law firm representing First Federal in the litigation; and Jerome Maher. The court found that the statements were made in connection with pending litigation and, therefore, were absolutely privileged.

Subsequently, plaintiffs filed a motion seeking leave to amend their complaint by adding a count alleging that defendants were guilty of tortious interference with plaintiffs' employment contracts with Glenview. The trial court denied the motion on the ground that plaintiffs had failed to allege sufficient facts to state a cause of action for tortious interference.

Plaintiffs appeal the trial court's orders granting defendants' motion for summary judgment on counts III and IV and denying plaintiffs' motion for leave to amend their complaint.

Plaintiffs contend that the trial court erred in finding that the statement that the plaintiffs were terminated "for cause" was not actionable. We disagree.

■■ A statement is defamatory *per se* if it is so obviously and naturally harmful to the person to whom it refers that a showing of special damages is unnecessary. (*Owen v. Carr* (1986), 113 Ill. 2d 273, 497 N.E.2d 1145.) Language which falsely imputes the commission of a criminal offense, infection with a loathsome disease, unfitness or want of integrity in performing duties of employment, or which prejudices a person in his or her profession is considered defamatory *per se*. In determining whether language defames a plaintiff, Illinois courts apply a rule of innocent construction. (*Chapski v.*

*Copley Press* (1982), 92 Ill. 2d 344, 443 N.E.2d 195.) Under this rule, a written or oral statement is to be considered in context, with the words and the implications therefrom given their natural and obvious meaning; if as so construed, the statement may reasonably be innocently interpreted, it cannot be actionable *per se. (Chapski,* 92 Ill. 2d at 352; *Costello v. Capital Cities Media, Inc.* (1982), 111 Ill. App. 3d 1009, 445 N.E.2d 13.) The preliminary determination of whether the words may be innocently construed is a question of law to be resolved by the court in the first instance; whether the publication was in fact understood to be defamatory is a question for the jury, should the initial determination be resolved in favor of the plaintiff. *Chapski,* 92 Ill. 2d at 352.

■ In the present case, the trial court granted summary judgment on the ground that the parties hearing the statement did not understand it to be defamatory. Plaintiffs argue that this was improper and that, under *Chapski,* the issue should have been presented to a jury for determination. Although we agree that the trial court failed to make the initial determination of whether the words used were capable of innocent construction, as required by *Chapski,* we believe that the trial court properly granted summary judgment on count III of the complaint.

Plaintiffs contend that an innocent construction of the words "for cause" would require the court to strain to find a possible, but unnatural meaning when a defamatory meaning is more probable. We do not agree.

■ We believe that a statement that an individual has been terminated "for cause" conveys little more than the obvious information that the person did not leave his or her employment voluntarily. In reaching this conclusion, we are aware that other courts have found that a statement that a party was terminated "for cause" is actionable *(Vanover v. Kansas City Life Insurance Co.* (1989), 438 N.W.2d 524; *Carney v. Memorial Hospital & Nursing Home* (1985), 64 N.Y.2d 770, 475 N.E.2d 451); however, we think that the better conclusion is that reached by the Connecticut Superior Court in *Terry v. Hubbell* (1960), 22 Conn. Supp. 248, 167 A.2d 919. There, it was held that the statement was not libel *per se* because "[t]aken in their 'natural and ordinary meaning,' the words 'discharged for cause' mean no more than that the plaintiff was released or dismissed from an office or employment for some undisclosed circumstance which operated to produce that effect." 22 Conn. Supp. at 256, 167 A.2d at 923.

In the present case, plaintiffs argue that the words "for cause"

carry a special defamatory meaning which imparts a clear and definite implication of impropriety. They cite the definition of termination "for cause" given in the Rules and Procedures of the Federal Home Loan Bank Board and the Federal Savings and Loan Insurance Corporation (12 C.F.R. §500.30 *et seq.* (1989)) and argue that because Russell and Jannotta were placement specialists in the savings and loan industry, they presumably were familiar with the meaning of the words "for cause" as used by savings and loans professionals.

■ Initially, we note that there is nothing in the record to support plaintiffs' contention that Russell and Jannotta were specialists in the savings and loan industry and that, therefore, they should be presumed to have assigned to the words "for cause" the definition given in the banking rules and procedures. In their complaint, plaintiffs allege only that Jannotta, Bray and Associates were engaged "in the business of retraining executives and professionals and performing the basic functions of an employment agency to help them locate new positions." There was no allegation that Russell and Jannotta had any special knowledge of the savings and loan industry or that they were familiar with the definition in question. Accordingly, we find that the trial court properly rejected plaintiffs' contention that the words "for cause" had a special meaning to Russell and Jannotta.

Further, we find that even if the definition of "for cause" as given in the rules and procedures is applicable, this would not require a conclusion that the words cannot be innocently construed. The rules and procedures define "for cause" as "personal dishonesty, incompetence, willful misconduct, breach of fiduciary duty involving personal profit, intentional failure to perform stated duties, willful violation of any law, rule, or regulation *** , or material breach of any provision of the contract." (12 C.F.R. §563.39 (1989).) Although this definition includes serious instances of misconduct, it also includes several reasons for termination which do not impute unfitness or want of integrity and which would not prejudice a person in his profession.

In addition, we find that because a qualified privilege existed, the statement was not actionable even if it could be considered defamatory.

■■ ■ The existence of a qualified privilege is a question of law for the court. (*Edwards v. University of Chicago Hospitals & Clinics* (1985), 137 Ill. App. 3d 485, 484 N.E.2d 1100; *American Pet Motels, Inc. v. Chicago Veterinary Medical Association* (1982), 106 Ill. App. 3d 626, 435 N.E.2d 1297.) The prerequisites of the privilege are: (1)

good faith by the publisher; (2) an interest to be upheld; (3) a statement limited in scope to that purpose; (4) a proper occasion; and (5) publication in the proper manner. (*Edwards v. University of Chicago Hospitals & Clinics*, 137 Ill. App. 3d at 489; *Roemer v. Zurich Insurance Co.* (1975), 25 Ill. App. 3d 606, 323 N.E.2d 582.) In determining whether a defendant acted in good faith, a reviewing court may consider the statement itself, the circumstances of its publication, and the relationship of the speaker and the hearers. (*American Pet Motels*, 106 Ill. App. 3d at 631.) In the case before us, it is apparent that the statement in question was made to further a legitimate interest on the part of defendants and that it was made in a proper manner and on a proper occasion.

The statement that plaintiffs were terminated "for cause" was made by defendants to an employee of a placement firm hired by defendants to assist plaintiffs in finding other employment. Defendants' purpose in making the statement was to explain why they would no longer pay for placement services provided to plaintiffs. Under the circumstances, we find that the statement was protected by a qualified privilege.

Plaintiffs next argue that the trial court erred in granting defendants' motion for summary judgment on count IV. Again we disagree.

An absolute privilege protects anything said or written in a legal proceeding, including out-of-court communications between attorneys and their clients. (*Libco Corp. v. Adams* (1981), 100 Ill. App. 3d 314, 426 N.E.2d 1130; *Weiler v. Stern* (1978), 67 Ill. App. 3d 179, 384 N.E.2d 762.) In the present case, it is undisputed that the purpose of the meeting at which Gravee allegedly made the statement concerning criminal conduct on the part of Skopp was to discuss a pending lawsuit filed against Glenview; nor is it disputed that the only persons present at the meeting were officers and board members of Glenview and First Federal and the attorneys representing First Federal in the litigation.

Plaintiffs contend that, because Skopp was not a party to the pending lawsuit, the statement was not pertinent or relevant to the litigation and, therefore, it was not protected by the privilege. This argument is without merit.

Although there is a requirement that the communication pertain to the litigation, this requirement is not applied strictly (*Weiler*, 67 Ill. App. 3d at 183; *Macie v. Clark Equipment Co.* (1972), 8 Ill. App. 3d 613, 290 N.E.2d 912), and the communication need not be confined to the specific issues involved in the litigation. (*Libco*, 100 Ill.

App. 3d at 317.) Further, when the question is raised, all doubts will be resolved in favor of a conclusion that the communication is pertinent or relevant. *Weiler,* 8 Ill. App. 3d at 615.

As we stated above, the statement at issue was made at a meeting between Glenview and First Federal officials and their attorneys at which they discussed a pending lawsuit. The lawsuit was filed by condominium purchasers who had obtained mortgage loans from Glenview. Their suit alleged that they had not received the proceeds from their loans and that their signatures had been forged on loan disbursement checks.

In his deposition, Skopp admitted that he turned over the checks in question to the condominium developer and that he was later informed that some of the signatures on the checks did not match those on the mortgage documents. Thus, in light of Skopp's involvement in the transactions that gave rise to the pending lawsuit, we believe that the statement was both relevant and pertinent even though he was not a party to the lawsuit filed against Glenview. Accordingly, we agree with the trial court's finding that the statement was absolutely privileged.

In their final argument, plaintiffs contend that the trial court erred in denying their motion for leave to amend their complaint to add a cause of action for tortious interference with contract. Plaintiffs argue that the trial court's decision was based on an error of law and that, therefore, it should be reversed. Once again, we disagree with plaintiffs' contentions.

There are five elements necessary to state a cause of action for tortious interference with contractual relations: (1) the existence of a valid and enforceable contract between plaintiff and a third person; (2) defendant's knowledge of the existing contract; (3) defendant's intentional and malicious inducement of the breach; (4) a subsequent breach by the third person; and (5) damage to the plaintiff. (*Martin v. Federal Life Insurance Co.* (1982), 109 Ill. App. 3d 596, 440 N.E.2d 998; *Mitchell v. Weiger* (1980), 87 Ill. App. 3d 302, 409 N.E.2d 38; *Bergfeld v. Stork* (1972), 7 Ill. App. 3d 486, 288 N.E.2d 15.) In the present case, plaintiffs have failed to allege facts sufficient to support a claim that defendants intentionally and maliciously induced a breach of the contract between First Federal and plaintiffs.

Inducement to breach a contract involves acts aimed at third parties other than the plaintiff which cause those parties to breach a contract held by the plaintiff. (*Mitchell,* 87 Ill. App. 3d at 305.) To be legally sufficient, a complaint must set forth factual alle-

gations, not conclusions of law, from which it reasonably may be inferred that defendants' actions were committed with malice and with the intent to cause plaintiff to lose his contract or allegations from which it can be inferred that defendants induced the breach intentionally and maliciously. (*Arlington Heights National Bank v. Arlington Heights Federal Savings & Loan Association* (1967), 37 Ill. 2d 546, 229 N.E.2d 514; *Idlehour Development Co. v. City of St. Charles* (1980), 88 Ill. App. 3d 47, 409 N.E.2d 544; *Bergfeld*, 7 Ill. App. 3d at 490.) A bare assertion that an act was done maliciously or with a certain purpose or intent is insufficient where there is no statement of facts that shows such purpose or intent. *Arlington*, 37 Ill. 2d at 551; *Bergfeld*, 7 Ill. App. 3d at 491.

In arguing that their proposed amendment was legally sufficient, plaintiffs contend that they alleged that Gravee and Maher knowingly misrepresented the results of their due diligence investigation to the First Federal board, falsely accusing plaintiffs of concealing the true value of Glenview's assets and net worth prior to the merger. Plaintiffs' contention is untrue.

Plaintiffs' proposed amendment to their complaint alleges that "Maher and Gravee devised a scheme whereby they would cause [First Federal] to breach its contractual obligations and relationships with [plaintiffs] by blaming them for Glenview's financial difficulties and accusing them of fraudulently concealing Glenview's net worth." After also stating that plaintiffs were subsequently informed that their services were no longer needed and that their employment contracts would not be honored, the complaint alleges that "Gravee and Maher intentionally and maliciously induced [First Federal] to breach its contractual obligations and relationships with [plaintiffs], which [First Federal] did." Nowhere in the complaint do plaintiffs allege that defendants performed any acts aimed at First Federal or made any statements directed to First Federal which induced it to breach plaintiffs' contracts.

In *Idlehour Development Co. v. City of St. Charles*, the court held that a paragraph in a complaint alleging that defendants "contrived and entered into a plan and conspiracy willfully and with malice to cause the breach of the contract" was conclusory and insufficient to state a cause of action for tortious interference. The court found, however, that when this allegation was considered together with further allegations in a later paragraph that defendants made false statements to a third party which resulted in a breach of contract, a cause of action was stated.

■■ Unlike *Idlehour*, the complaint before us contains only the

conclusory allegations that defendants devised a scheme to induce First Federal to breach plaintiffs' contracts and that defendants subsequently induced First Federal to breach the contracts. These allegations clearly are insufficient to state a cause of action for tortious interference with contractual relations. Accordingly, we find that the trial court properly denied plaintiffs' motion to amend their complaint.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

RIZZI and CERDA, JJ., concur.