In re AMERICAN CONTINENTAL/LINCOLN SAVINGS & LOAN SECURITIES LITIGATION.

LEXECON, INC. and Daniel R. Fischel, Plaintiffs,

v.

MILBERG WEISS BERSHAD HYNES & LERACH, a Partnership; Cotchett, Illston & Pitre, a Partnership; and Patrick Coughlin, William S. Lerach, Kevin P. Roddy, Leonard B. Simon, Melvyn I. Weiss, Patricia Hynes, Michael C. Spencer, Stephen Steinberg, Joseph Cotchett, and Susan Illston, Individually, Defendants.

MDL No. 834.
No. CV 93–1087 PHX JMR.

United States District Court, D. Arizona.

April 24, 1995.

Alan N. Salpeter, Michele Odorizzi, Mayer, Brown & Platt, Chicago, IL, A. Bates Butler, III, Butler & Stein, P.C., Tucson, AZ, for plaintiffs.

Michael Meehan, Meehan & Associates, Tucson, AZ, Jerold S. Solovy, Ronald L. Marmer, Jenner & Block, Chicago, IL, for defendants Milberg et al.

Gerald Maltz, Miller, Pitt & McAnally, P.C., Tucson, AZ, Joseph W. Cotchett, Cotchett, Illston & Pitre, Burlingame, CA, for defendants Cotchett, Illston & Pitre, Joseph W. Cotchett and Susan Illston.

## ORDER

ROLL, District Judge.

Pending before the Court are defendants' motions for summary judgment in connection with the remaining claims of plaintiffs and plaintiffs' motion to dismiss the Milberg Weiss defendants' counterclaims. Defendants are the law firm of Milberg, Weiss, Bershad, Hynes and Lerach, and certain individually named firm members ("Milberg Weiss"), and the law firm of Cotchett, Illston and Pitre and partners Joseph Cotchett and Susan Illston ("Cotchett, Illston and Pitre").

## Factual and Procedural Background

The factual background concerning this matter is set forth in a previous Order issued by this Court. *In re American Continental Corp./Lincoln S & L Sec. Lit.; Lexecon, Inc. v. Milberg, Weiss,* 845 F.Supp. 1377 (D.Ariz. 1993). That Order resulted in the dismissal of malicious prosecution and abuse of process claims of plaintiffs and the dismissal of most defamation claims. Still pending are (1) plaintiffs' defamation claim against all defendants arising from the distribution of the proposed Sixth Amended Complaint; (2) plaintiffs' defamation claim against the Milberg Weiss defendants based upon the Roddy letter to the *National Law Journal;* (3) plaintiffs' tortious interference and commercial disparagement claims against the Milberg Weiss defendants; and (4) the Milberg Weiss defendants' counterclaims. This Order addresses the defendants' motions for summary judgment as to all of these remaining claims of plaintiffs and plaintiffs' motion to dismiss the Milberg Weiss defendants' counterclaims.

## Sixth Amended Complaint

The Court previously denied defendants' motion to dismiss plaintiffs' defamation claim arising from Milberg Weiss' dissemination of the proposed Sixth Amended Complaint.

## Facts

On March 26, 1990, defendants disseminated to the service list a proposed Fifth Amended Complaint in the *Lincoln Savings* litigation, adding Lexecon and Daniel Fischel as defendants. The proposed complaint was accompanied by a motion for leave to file. The Hon. Richard M. Bilby, the judge to whom the *Lincoln Savings* case was assigned, denied without prejudice the motion to file that complaint as it related to Lexecon and Fischel.

Thereafter, the decision was made by class counsel to again attempt to sue Lexecon and/or Daniel Fischel. The task of writing that portion of the proposed Sixth Amended Complaint relating to Lexecon fell to Milberg Weiss partner Kevin Roddy. Soliciting input from Milberg Weiss partners Leonard Simon and William Lerach and co-lead counsel Joseph Cotchett of the law firm of Cotchett,

Illston and Pitre, Roddy's complaint named both Lexecon and Fischel as defendants. On Friday, December 14, 1990, Roddy, working alone in Milberg Weiss' Los Angeles office, determined that the complaint was finalized and sent it to all the attorneys appearing on the MDL 834 service list, pursuant to Judge Bilby's management order.[1] This complaint totalled 231 pages. Roddy also gave instructions for the Sixth Amended Complaint to be filed with the District Court in Arizona.

When Simon, the class counsel responsible for that portion of the case dealing with Lexecon, learned of Roddy's dissemination of the proposed Sixth Amended Complaint, he notified Arizona counsel not to file the documents. On December 18, 1990, only four days after Roddy had disseminated the proposed complaint, a revised Sixth Amended Complaint which named Lexecon as a defendant but deleted Fischel as a party was filed with the court and disseminated to the service list.[2]

### Discussion

Plaintiffs maintain that dissemination of the proposed Sixth Amended Complaint by Roddy on December 14, 1990, listing Fischel as a defendant, constitutes an intentional and deliberate defamatory act by defendants in furtherance of a conspiracy to destroy them. Because an attorney from the firm of Cotchett, Illston and Pitre signed the aborted Roddy complaint and that firm was co-lead counsel with Milberg Weiss in *Lincoln Savings,* Cotchett, Illston and Pitre are also alleged to have been participants in this conspiracy.

In support of their allegations, plaintiffs point to a disturbing history of acrimonious statements made by members of the Milberg Weiss firm concerning Fischel. These statements are set forth in detail in the discussion below concerning plaintiffs' tortious interference and commercial disparagement claims.

■ The December 14, 1990 proposed Sixth Amended Complaint must be considered in context. Plaintiffs maintain that inclusion of Fischel as a defendant in that complaint was intended to defame. The Fifth Amended Complaint, however, also listed Fischel as a defendant and identified the same alleged conduct by Fischel. Furthermore, the revised Sixth Amended Complaint that was ultimately filed on December 18, 1990, contained virtually all of the allegations against Fischel set forth in the aborted Sixth Amended Complaint. The only significant difference between the proposed Sixth Amended Complaint circulated by Roddy on December 14, 1990, and the Sixth Amended Complaint that was filed December 18, 1990, is that Fischel is not named as a defendant in the latter complaint.[3] Roddy and Simon have sworn that the December 14, 1990 dissemination of the Sixth Amended Complaint by Roddy was simply a mistake. No direct evidence controverts this testimony.[4]

■ To establish defamation based upon Roddy's dissemination of the proposed Sixth Amended Complaint, plaintiffs must show that the complaint was false and defamatory

1. Although one could infer to the contrary from Lexecon's complaint, it is now clear that Roddy only disseminated the Sixth Amended Complaint to the service list. While that list is admittedly a lengthy one (101 attorneys), Lexecon does not allege that the complaint was disseminated to disinterested third parties.

2. On December 17, 1990 Simon sent a letter to the service list instructing recipients to disregard the previous motion. This letter did not specifically state that the difference between the two complaints was that Daniel Fischel was not named as a defendant in the latter.

3. The Sixth Amended Complaint, attached as an exhibit to the December 18, 1990 motion for leave to file an amended complaint, differed from the Roddy complaint in the following respects: (1) Fischel was deleted from the caption; (2) twelve references to "defendants Lexecon and Fischel" in the body of the complaint were changed, nine times to "defendant Lexecon and Fischel" and three times to "defendant Lexecon"; and (3) six references to "defendant Fischel" were changed, five times to "Fischel" and the sixth reference was deleted. However, it still incorrectly contained three references to "defendants Lexecon and Fischel" and one reference to "defendant Fischel." When Judge Bilby granted the motion for leave to file the Sixth Amended Complaint on February 15, 1991, the Sixth Amended Complaint which was filed that day corrected the erroneous references to Fischel.

4. Plaintiffs' only evidence countering this testimony is the inferences to be drawn from the long-running feud between plaintiffs and defendants.

and that defendant Roddy acted with knowledge of the falsity of the allegations or with reckless disregard for the truth or falsity thereof. *New York Times v. Sullivan,* 376 U.S. 254, 279–80, 84 S.Ct. 710, 725–26, 11 L.Ed.2d 686 (1964). Furthermore, because Fischel is a "limited-purpose public figure,"[5] were this claim to proceed to trial, plaintiffs would have the burden of proving this last element by clear and convincing evidence.[6] *Id.,* 376 U.S. at 285–86, 84 S.Ct. at 728–29.

Summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). No reasonable jury could find that defendants intentionally disseminated a complaint and withdrew it four days later in order to harm plaintiff Daniel Fischel.[7] Because the evidence against the Cotchett, Illston and Pitre defendants is far less persuasive than that against the Milberg Weiss defendants, their motion for summary judgment must also be granted.

**The Kevin Roddy Letter to the National Law Journal**

This Court previously denied defendants' motion to dismiss defamation claims based upon the letter submitted by Kevin Roddy to the *National Law Journal.*

*Facts*

On December 14, 1992, the *National Law Journal* printed a story concerning the *Lincoln Savings* litigation. Randall Samborn, *Firms Sued in Wake of Lincoln S & L Case,* National Law Journal, December 14, 1992 at 2. There is no evidence that Lexecon or Daniel Fischel were responsible for the publication of this article.

In response to that article, Kevin Roddy wrote a letter to the *National Law Journal.* Kevin P. Roddy, *Defendants Tell Their Side*

*of Lexecon Suit,* National Law Journal, March 8, 1993 at 16.

*Discussion*

Plaintiffs argue that Roddy's letter was false and defamatory because the letter stated: (1) Judge Bilby, in a published opinion, had detailed Lexecon's "wrongful activities on behalf of convicted felon Charles H. Keating, Jr.'s American Continental Corporation and Lincoln Savings and Loan in fraudulent dealings with federal regulators"; (2) Lexecon had "settled" with plaintiffs; and (3) "to date, Lexecon has paid Plaintiffs Litigation Group more than $700,000 as part of that settlement."

▮ Defendants first maintain that the letter is not actionable because it is true. As to the first matter, relating to the characterization of Judge Bilby's published opinion, the Court finds otherwise. *In re American Continental Corp./Lincoln S & L Sec. Lit.,* 794 F.Supp. 1424, 1448–49 (D.Ariz.1992), Judge Bilby detailed the *allegations* against Lexecon. Judge Bilby held that a rational finder of fact could find that Lexecon possessed reckless scienter in its performance of certain services on behalf of Charles Keating, Jr., and therefore denied Lexecon's motion for summary judgment. Defendants contend that because the readership of the *National Law Journal* is primarily composed of lawyers and the Roddy letter refers to the order being issued in the context of denial of a motion for summary judgment, readers of the article must have understood that Judge Bilby's order merely stated that sufficient evidence of Lexecon's misconduct existed to preclude summary judgment. The Roddy letter, however, does not accurately report what Judge Bilby's order stated. The letter attempts to enhance Milberg Weiss' allegations by recasting those allegations as the conclusions reached by Judge Bilby. Plain-

---

5. The distinction between a "limited-purpose public figure" and a "public figure" is discussed in *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 351, 94 S.Ct. 2997, 3012–13, 41 L.Ed.2d 789 (1974). Here, because all references to Fischel are directly related to his public figure status as an expert in the securities field, he is treated as a public figure.

6. The Ninth Circuit has recently clarified that this is the only element of the defamation action

which must meet this heightened standard of proof. *Rattray v. City of National City,* 51 F.3d 793 (9th Cir.1994, amended March 21, 1995).

7. The Court also finds that the record, after full and thorough discovery, lacks sufficient evidence to support an alternative finding of recklessness on the part of Roddy, Simon, or other Milberg Weiss defendants.

tiffs contend that Roddy's statement was defamatory per se. Illinois law recognizes two kinds of defamation: defamation per se and defamation per quod. *Kolegas v. Heftel Broadcasting Corp.*, 154 Ill.2d 1, 180 Ill.Dec. 307, 607 N.E.2d 201 (1992). Defamation per se encompasses those statements whose defamatory character is apparent on its face; defamation per quod categorizes those statements which require extrinsic facts in order to explain their defamatory meaning. *Id.*, 180 Ill.Dec. at 312, 607 N.E.2d at 206.

■ There are four categories of statements under Illinois law that are considered defamatory per se: (1) words which impute the commission of a criminal offense; (2) words that impute infection with a loathsome communicable disease; (3) words that impute an inability to perform or want of integrity in the discharge of duties of office or employment; or (4) words that prejudice a party, or impute lack of ability in his or her trade, profession or business. *Id.* Roddy's letter's reference to Judge Bilby's order is within categories (3) and (4).

■ Nevertheless, even if a statement falls into one of the four per se categories, it will not be found to be defamatory per se if it is reasonably capable of an innocent construction. *Id.* Milberg Weiss argues that Illinois' innocent construction rule applies to this statement. This rule requires the Court to consider the statement in context, giving the words their ordinary meaning. If the statement may reasonably be innocently construed, it will not be regarded as defamatory per se. *Id.* Milberg Weiss contends that Roddy's letter is capable of being innocently construed, relying upon *Owen v. Carr*, 113 Ill.2d 273, 100 Ill.Dec. 783, 497 N.E.2d 1145 (1986).

Milberg Weiss' reliance on *Owen* is misplaced. In that case, the Illinois Supreme Court examined another *National Law Journal* article in its entirety and concluded that the defendant attorney's comments were capable of being construed as "an attorney's biased presentation of his client's view of a pending cause of action." *Id.*, 100 Ill.Dec. at 786, 497 N.E.2d at 1148. In contrast, Roddy depicted his letter as a factual recitation. His letter stated:

For those readers who are interested in *facts,* however, let me point out the following:

. . . .

Lexecon's motion for summary judgment also was denied by Judge Richard M. Bilby, in a published opinion that details its wrongful activities on behalf of convicted felon Charles H. Keating, Jr.'s American Continental Corp. and Lincoln Savings & Loan in fraudulent dealings with federal regulators. *In re American Continental Corp./Lincoln Savings & Loan Securities Litigation,* 794 F.Supp. 1424, 1443–49 (D.Ariz.1992).

(Emphasis in original). Nor, contrary to defense counsel's suggestion, does Roddy's citation to Judge Bilby's opinion significantly mitigate the inaccurate nature of his statement. If anything, inclusion of the citation was likely to be viewed by readers as authoritative proof that the proceedings unfolded as Roddy described.

■ Milberg Weiss also suggests that Roddy's letter falls within the "self defense" privilege of Illinois common law. *See, e.g.,* Restatement (Second) of Torts § 594, comment e. However, as the initial article was neither defamatory nor solicited by Lexecon, this privilege does not attach.

■ Defendants' last argument is that Roddy's summary of Judge Bilby's order is privileged because it was a fair abridgement of judicial proceedings. But, as the Court has already found, Roddy's letter was not an accurate summary. Accordingly, this privilege also does not apply.

■ Milberg Weiss defendants also seek summary judgment as to the remaining two statements in the Roddy letter. These statements concern the assertion that Lexecon entered a "settlement" and "to date, Lexecon has paid ... more than $700,000...."

Plaintiffs contend that the letter falsely stated that "Lexecon settled with plaintiffs." Dismissal of the class's claims against Lexecon occurred following negotiations between Lexecon counsel and counsel for the class. The dismissal was termed a "resolution" rather than a settlement. The resolution

required Lexecon to provide substantial services. Roddy's characterization of the resolution as a settlement was not false.[8]

The resolution obligated Lexecon to perform certain services. Lexecon did not perform these services; rather, owing to a dispute with class counsel, it paid to the class an amount equal to the professional fees it earned from Keating. This amount exceeded $700,000. Accordingly, the Roddy letter was also not false in its suggestion that in settling with the class, Lexecon "to date" had "paid ... more than $700,000."[9]

Milberg Weiss defendants' motion for summary judgment is denied as to the Roddy letter's summary of Judge Bilby's published opinion and is granted in all other respects.

### Tortious Interference and Commercial Disparagement Claims

The previous Order dismissed all remaining defamation claims. However, the conduct that was the basis for those dismissed claims is also the conduct upon which plaintiffs base their tortious interference and commercial disparagement claims.

### Facts

The acts that form the basis of plaintiffs' tortious interference and commercial disparagement claims are as follows:

(1) The statement of Milberg Weiss attorney Patrick Coughlin, which appeared in the March 15, 1991 issue of *The Recorder*, a San Francisco-area legal newspaper, that Fischel made the "biggest mistake any guy made in the country";

(2) Milberg Weiss attorney William Lerach's statement at a securities litigation seminar in northern California on July 23, 1991, that Fischel gave Charles Keating, Jr. a "clean bill of health";

(3) Milberg Weiss attorney Patricia Hynes' statement to opposing counsel on a recess after a hearing in district court in Chicago that Lexecon carried "too much baggage" to be an effective expert witness for opposing counsel;

(4) Statements concerning Lexecon made by Milberg Weiss attorneys in briefs and in Court during the *Apple Computer* litigation, including Coughlin's statement in court that "we actually think [Fischel's] a crook;"

(5) Statements made by Milberg Weiss attorneys during the *Lincoln Savings* litigation, including the contents of the proposed Fifth Amended Complaint in which Lexecon and Fischel were named as defendants, which prompted Arthur Young to terminate its relationship with Lexecon;

(6) Milberg Weiss attorney Leonard Simon's statement to Sidney Davidson after Judge Bilby denied the motion to file the Fifth Amended Complaint, concerning class counsels' intent to sue Fischel and Lexecon again;

(7) Milberg Weiss' alleged attempt to "extort" testimony from Lexecon in exchange for dismissal from the *Lincoln Savings* litigation;

(8) Milberg Weiss attorney Kevin Roddy's statement to an FDIC lawyer that Lexecon, in *Lincoln Savings*, blamed the government for the collapse of that savings and loan; and,

(9) Dissemination of the proposed Sixth Amended Complaint on December 14, 1990.[10]

### Discussion

 Illinois law recognizes a litigation privilege which accords litigants an absolute privilege with respect to certain communications. *Zanders v. Jones*, 680 F.Supp. 1236

---

8. The Court has previously ruled that Judge Bilby's December 31, 1992 order would be given preclusive effect. In that order, Judge Bilby held that the resolution which effected Lexecon's dismissal was a bargained-for exchange, with consideration flowing both ways.

9. While no one expected Lexecon to pay additional money, Roddy's reference "to date" was at most an inartful way of stating that Lexecon had met its obligations under the terms of the resolution.

10. Plaintiffs also point to other statements made by Milberg Weiss attorneys, including Melvyn Weiss' threat to Fischel to "destroy" him and Eric Isaacson's letter to co-counsel in which he refers to Fischel in derogatory terms. While plaintiffs do not contend that these statements are actionable in themselves, plaintiffs point to them as additional evidence of Milberg Weiss' personal animosity towards plaintiffs.

(N.D.Ill.1988); *Skopp v. First Federal Savings of Wilmette,* 189 Ill.App.3d 440, 136 Ill.Dec. 832, 545 N.E.2d 356 (1st Dist.1989); *Libco Corp. v. Adams,* 100 Ill.App.3d 314, 55 Ill.Dec. 805, 426 N.E.2d 1130 (1st Dist.1981). The only qualification to this privilege is that the communication pertain to litigation. *Skopp,* 136 Ill.Dec. at 837, 545 N.E.2d at 361. Under these cases, "anything said or written in the course of a legal proceeding is protected by an absolute privilege." *Zanders,* 680 F.Supp. at 1238. Furthermore, the communication need not occur in court. For instance, in *Zanders,* a telephone conversation between opposing counsel was conceded to fall within the rule, and in *Libco,* a communication between two attorneys suing the same defendant was found to be privileged. The rationale for the privilege is to secure for attorneys as officers of the court the utmost freedom in representing clients. *Libco,* 55 Ill.Dec. at 807, 426 N.E.2d at 1132 (citing Restatement (Second) of Torts § 586, Comment a). All doubts are to be resolved in favor of finding that the privilege applies. *Skopp,* 136 Ill.Dec. at 837, 545 N.E.2d at 361. Applying this law to the facts presented, statements (3), (4), (5), (6), (7) and (8) are privileged.[11] Accordingly, these statements cannot form the basis for any tort.[12]

▇▇▇ Statements (1) and (2) are clearly expressions of opinion. Opinion statements are not actionable as defamation. *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 19, 110 S.Ct. 2695, 2706, 111 L.Ed.2d 1 (1990).[13] Opinions are also not actionable as commercial disparagement.[14] Lexecon maintains,

however, that opinions may be actionable under a theory of tortious interference, citing *Chaves v. Johnson,* 230 Va. 112, 335 S.E.2d 97 (1985). However, the continuing viability of *Chaves'* holding is highly questionable in light of *Hustler Magazine, Inc. v. Falwell,* 485 U.S. 46, 108 S.Ct. 876, 99 L.Ed.2d 41 (1988). Furthermore, in *Unelko Corp. v. Rooney,* 912 F.2d 1049, 1057–1058 (9th Cir. 1990), the Ninth Circuit stated that claims for tortious interference and commercial disparagement "are subject to the same first amendment requirements that govern actions for defamation." Therefore, under the rationale of *Falwell* and *Unelko,* statements (1) and (2) are not actionable as either tortious interference or commercial disparagement.

▇▇▇ In addition, plaintiffs inability to disaggregate damages is fatal to these claims. Plaintiffs' only damages expert, plaintiff Daniel Fischel himself, has testified at his deposition that he is unable to apportion plaintiffs' losses among the several acts which are claimed to be tortious. The Ninth Circuit has held that summary judgment is proper when a plaintiff has not or cannot disaggregate damages caused by actionable events from those caused by non-actionable events. *City of Vernon v. Southern Cal. Edison Co.,* 955 F.2d 1361, 1372–73 (9th Cir. 1992). Fischel, during his deposition testimony, was unable to disaggregate damages attributable to defendants' various acts. The time for discovery has elapsed. Since plaintiffs cannot separate the damages resulting from statements (1) and (2) from damages

---

11. Plaintiffs argue that the privilege should be limited to situations in which attorneys are acting as advocates on behalf of their clients, so that "gratuitous" remarks in the course of otherwise protected conversations would be actionable. This position is not supported in Illinois law.

12. Additionally, statements (6) and (8) are not actionable as tortious interference because they are substantially true. *George A. Fuller Co. v. Chicago College of Osteopathic Medicine,* 719 F.2d 1326, 1332 n. 4 (7th Cir.1983) (citing Restatement (Second) of Torts § 772(a)).

13. Milberg Weiss asserts that opinion statements are "constitutionally privileged," and that once a privilege attaches to a statement, it is not actionable under any tort theory. *Genelco, Inc. v. Bowers,* 181 Ill.App.3d 1, 129 Ill.Dec. 733, 536 N.E.2d 783 (1st Dist.1989). However, the Su-

preme Court has explicitly held that opinions are not constitutionally privileged. *Milkovich,* 497 U.S. at 21, 110 S.Ct. at 2707. The reason opinions are not actionable as defamation is that it is impossible to prove their falsity, a necessary element of defamation. *Id.,* 497 U.S. at 20, 110 S.Ct. at 2706–07.

14. The Illinois statutory definition of commercial disparagement protects against "false or misleading misrepresentation[s] of *fact.*" 815 ILCS § 510/2(8) (emphasis added). Illinois common law commercial disparagement requires a plaintiff to show a *false* and demeaning statement regarding the quality of another's goods or services. *Appraisers Coalition v. Appraisal Institute,* 845 F.Supp. 592, 610 (N.D.Ill.1994).

resulting from the other statements which the Court has found to be privileged, plaintiffs may not recover any damages for them.

Finally, plaintiffs maintain that Roddy's dissemination of the proposed Sixth Amended Complaint could be the basis for an action under either a tortious interference or commercial disparagement theory. For the reasons previously set forth relating to Illinois' litigation privilege and plaintiffs' inability to disaggregate damages, the complaint cannot be the basis for these claims.

### Defendant's Counterclaims

Plaintiffs have filed a motion to dismiss the Milberg Weiss defendants' counterclaims. These counterclaims consist of three contract-related counts, those being breach of contract, unjust enrichment, and promissory estoppel, and one count of fraud.

Milberg Weiss was class counsel in the *Lincoln Savings* securities litigation. The counterclaims are based upon assertions that Lexecon misled Milberg Weiss into accepting the "resolution," resulting in the dismissal of Lexecon. It is undisputed that Lexecon counsel stated that plaintiffs wanted the dismissal to be labelled a resolution in order to prevent future damaging cross-examination of Fischel concerning a settlement of the *Lincoln Savings* case. However, Milberg Weiss maintains Fischel also wanted the case termination to be labelled a resolution so that he would preserve the option of suing class counsel. Milberg Weiss argues that Lexecon was under a duty to disclose this second motive to them.[15]

Milberg Weiss defendants also argue that Lexecon misrepresented the existence of insurance coverage. This ground, however, is not alleged in the counterclaims.[16]

 The counterclaims must be dismissed. All of the counterclaims assume

that class counsel was a *party* to the resolution. The law is otherwise. Lawyers are agents of clients. *Barmat v. John and Jane Doe Partners A–D*, 155 Ariz. 515, 517, 747 P.2d 1214, 1216 (App.1986) (citing Restatement (Second) of Agency § 1, comment e), *aff'd in relevant part*, 155 Ariz. 519, 747 P.2d 1218 (1986). An agent is not a party to a contract. Restatement (Second) of Agency § 320, comment b. Whatever harm resulting from the resolution was sustained by the class, not by class counsel. Therefore, defendants lack standing to pursue these claims. Plaintiffs' motion to dismiss the counterclaims is well taken.

### Conclusion

For the foregoing reasons, **IT IS HEREBY ORDERED** that Milberg Weiss defendants' motions for summary judgment as to the defamation claim based upon dissemination of the Sixth Amended Complaint, the tortious interference claims, and the commercial disparagement claims **ARE GRANTED.**

**IT IS FURTHER ORDERED** that Milberg Weiss defendants' motion for summary judgment as to the Kevin Roddy letter to the *National Law Journal* **IS GRANTED IN PART AND DENIED IN PART.**

**IT IS FURTHER ORDERED** that the Cotchett, Illston and Pitre defendants' motion for summary judgment **IS GRANTED.**

**IT IS FURTHER ORDERED** that plaintiffs' motion to dismiss defendants' counterclaims **IS GRANTED.**

By separate Order, the Court will address the venue issue.

---

**15.** Plaintiffs' lawsuit against Milberg Weiss cannot be said to be entirely unexpected in light of Lexecon's counsel's inquiry of class counsel, during negotiations of the "resolution," as to whether it would be necessary for Lexecon to give up any right Lexecon might have to file future lawsuits against class counsel. Class counsel stated that forbearance of any future actions was unnecessary.

**16.** Lexecon had insurance proceeds in the amount of approximately $2 million at the time the resolution was entered, which reflected a favorable settlement Lexecon achieved with its insurance carrier to partially reimburse its litigation expenses. Lexecon counsel had previously indicated that no insurance existed. Lexecon maintains that it's insurance policies were produced and deposited in MDL 834 document depository and so were available for inspection by defendants.