551 P.2d 571

Samuel R. JOSEPH, M.D., Appellant,

v.

Meyer MARKOVITZ, M.D., Roy S. Weinrach, M.D., and Liberty Mutual Insurance Company, Appellees.

LIBERTY MUTUAL INSURANCE COMPANY, a corporation, Cross-Appellant,

v.

Samuel R. JOSEPH, M.D., Cross-Appellee.

No. 1 CA–CIV 2736.

Court of Appeals of Arizona, Division 1, Department B.

June 29, 1976.
Rehearing Denied Aug. 9, 1976.
Review Denied Sept. 21, 1976.

**124**

Hofmann, Salcito & Hover, P. C. by Leroy W. Hofmann, Phoenix, for appellant and cross-appellee, Samuel R. Joseph, M. D.

Renaud, Cook, Miller & Cordova, P. A. by Richmond Turner and J. Gordon Cook, Phoenix, for appellees and cross-appellant, Meyer Markovitz, M. D., Roy S. Weinrach, M. D., and Liberty Mutual Ins. Co.

## OPINION

WREN, Judge.

The plaintiff below, Samuel R. Joseph, M.D., brings this appeal from the granting of motions for summary judgment in favor of the defendants, Meyer Markovitz, M.D., Roy S. Weinrach, M.D., and Liberty Mutual Insurance Company. Liberty Mutual has cross-appealed the granting of summary judgment in favor of Dr. Joseph on the issue of attorney's fees.

Dr. Joseph's claim against the defendants had its origin in a malpractice action instituted by one L. D. Dennis, the surviving spouse of Pearlie B. Dennis, against Drs. Markovitz and Weinrach. At the time of the alleged malpractice, Dr. Joseph was a partner with Dr. Markovitz and a third physician in the practice of internal medicine. Dr. Weinrach was an associate of the partners. This partnership was dissolved prior to the filing of the malpractice action. Liberty Mutual was the insurance carrier for the doctors and the policy limits were $100,000.

Rather than stating a dollar amount, the Dennis complaint sought such damages as were fair and reasonable. The potential verdict therefore might have exceeded policy limits. A third-party complaint was then filed against Dr. Joseph by the defendants in the malpractice action alleging a right to indemnity from Dr. Joseph under their partnership agreement for 20 per cent of any judgment exceeding policy limits.

The malpractice action was tried to a jury which found in favor of Drs. Markovitz and Weinrach. Thereafter, they moved to dismiss the third-party complaint, and the motion was granted by the court.

Dr. Joseph then filed his action against all three of the defendants alleging that the filing of the third-party complaint against him constituted malicious prosecution, abuse of process and intentional infliction of emotional distress. Against Liberty Mutual alone he alleged bad faith and sought attorney's fees for the defense of the third-party claim.

## MALICIOUS PROSECUTION

In order to sustain a cause of action for malicious prosecution, the plaintiff is required to show that a civil or criminal proceeding was instituted by the defendant against the plaintiff; that the suit terminated in favor of the plaintiff; that it was commenced without probable cause; and that it was motivated by malice. *Visco v. First National Bank of Arizona*, 3 Ariz. App. 504, 415 P.2d 902 (1966); *Lantay v. McLean*, 2 Ariz.App. 22, 406 P.2d 224 (1965); 52 Am.Jur.2d Malicious Prosecution § 6; 54 C.J.S. Malicious Prosecution § 4; Prosser, *Law of Torts* (4th ed.) p. 835. The existence of probable cause to institute the action is a complete defense to malicious prosecution without regard to the existence of malice. *McClinton v. Rice*, 76 Ariz. 358, 265 P.2d 425 (1953); *Murphy v. Russell*, 40 Ariz. 109, 9 P.2d 1020 (1932); *Todd v. Melcher*, 11 Ariz.App. 157, 462 P. 2d 850 (1969); *Lantay v. McLean*, supra. Whether probable cause existed is a ques-

tion of law to be decided by the trial judge. *Murphy v. Russell,* supra.

In support of their motions for summary judgment, the defendants submitted affidavits of Drs. Markovitz and Weinrach and of Richard Segal, their attorney in the malpractice action. Segal's deposition was also in evidence. Both the affidavits and deposition established that the idea of filing the third-party complaint against Dr. Joseph originated with Segal, and that the decision to file it was also left to Segal. It was Segal's opinion that Dr. Joseph would be liable under the partnership agreement for 20 per cent of any verdict exceeding the insurance recovery limits. The attorney stated in his deposition that he informed Liberty Mutual of his intention to sue Dr. Joseph because he knew Liberty Mutual would probably have to finance Dr. Joseph's defense. The record is void of any indication that the defendants initiated or encouraged the filing of the third-party suit. They merely relied upon Segal's legal expertise.

█ It has been generally recognized that the advice of a duly-licensed attorney given after full and truthful disclosure of the facts is sufficient to establish probable cause even if the lawyer's advice was erroneous. *Tate v. Connel,* 3 Ariz.App. 534, 416 P.2d 213 (1966); *Patapoff v. Vollstedt's, Inc.,* 230 Or. 266, 369 P.2d 691 (1962); *Allen v. Moyle,* 84 Idaho 18, 367 P.2d 579 (1961); *Consumers Filling Station Company v. Durante,* 79 Wyo. 237, 333 P.2d 691 (1958); *Masterson v. Pig 'N Whistle Corporation,* 161 Cal.App.2d 323, 326 P.2d 918 (1958); 52 Am.Jur.2d Malicious Prosecution § 77; Prosser, *Law of Torts* (4th ed.) p. 844. Probable cause having been established as a matter of law, malicious prosecution cannot lie.

█ We recognize that a summary judgment must be viewed in a light most favorable to the party against whom it was directed and that it is inappropriate if there is any doubt as to whether an issue of material fact exists. *Livingston v. Citizen's Utility, Inc.,* 107 Ariz. 62, 481 P.2d 855 (1971); *Boozer v. Arizona Country Club,* 102 Ariz. 544, 434 P.2d 630 (1967); *Flynn v. Lindenfield,* 6 Ariz.App. 459, 433 P.2d 639 (1967). However, when a motion for summary judgment is supported by proof of specific facts which would defeat plaintiff's claim, plaintiff must then come forward to show the existence of a genuine factual issue. *Davis v. Vumore Cable Co.,* 14 Ariz.App. 411, 484 P.2d 23 (1971); *Patton v. Paradise Hills Shopping Center, Inc.,* 4 Ariz.App. 11, 417 P.2d 382 (1966).

█ On appeal, an appellant must be able to point to an issue of fact in the record which renders the summary judgment improper. *Mozes v. Daru,* 4 Ariz.App. 385, 420 P.2d 957 (1966). The record here is void of any evidence showing that Dr. Markovitz, Dr. Weinrach or Liberty Mutual, in filing the third-party complaint, did anything other than follow Segal's advice in good faith after full disclosure of all the facts. Such facts establish probable cause as a matter of law and Dr. Joseph's allegations of malice, even if true, will not support a malicious prosecution action where probable cause is shown to exist.

## ABUSE OF PROCESS

"Abuse of process differs from malicious prosecution in that the gist of the tort is not commencing an action or causing process to issue without justification, but misusing, or misapplying process justified in itself for an end other than that which it was designed to accomplish. The purpose for which the process is used, once it is issued, is the only thing of importance. Consequently in an action for abuse of process it is unnecessary for the plaintiff to prove that the proceeding has terminated in his favor, or that the process was obtained without probable cause or in the course of a proceeding begun without probable cause.

\*    \*    \*    \*    \*    \*

"The essential elements of abuse of process, as the tort has developed, have been stated to b: first, an ulterior purpose, and second, a wilful act in the use

of the process not proper in the regular conduct of the proceeding. Some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process, is required; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." Prosser, *Law of Torts* (4th ed.) p. 856 and 857.

■ Dr. Joseph's claim of abuse of process is based on his allegation that the third-party complaint was filed against him to prevent his testifying against Drs. Markovitz and Weinrach. In support of this claim, Dr. Joseph points to certain answers given by Segal in his deposition.

"Q. Is it not true that one of the reasons that you believed that the plaintiff's attorneys did not want Joseph as a party to the law suit was that Joseph might be less willing to testify as a witness on the plaintiff's behalf?

"A. I had considered that.

"Q. That was part of your belief?

"A. Yes.

     *    *    *    *    *    *

"A. No, I didn't think it would affect his willingness to be a witness.

"Q. What did you think it would affect?

"A. I thought it would affect his hard feelings towards Markovitz and Weinrach, as they had described them to me, upon Dr. Joseph's testimony.

"Q. You felt that he might be less an advocate, so to speak, if he were a party than otherwise?

"A. Yes.

"Q. Okay. Less enthusiastic in his testimony?

"A. Less reckless. I was not interested in his enthusiasm."

However, as noted supra, proof of abuse of process requires some act beyond the initiation of a lawsuit; such as, if Drs. Markovitz and Weinrach had offered to dismiss the third-party complaint in exchange for Dr. Joseph not testifying against them. Dr. Joseph has not alleged such an actual use of the suit to prevent his testimony. In fact he did testify against them at the trial of the malpractice action. His allegation is only that he believed this to be defendants' purpose. However, we do not find that Segal's deposition indicates this to have been a purpose and, in any event, no act or threat beyond the filing of the lawsuit itself to bring about such a result, was alleged in his complaint and abuse of process cannot therefore be maintained.

## EMOTIONAL DISTRESS

■ It is Dr. Joseph's position that the filing of the third-party complaint against him by Drs. Markovitz and Weinrach, with the acquiescence of his own insurance carrier, and the fact that Liberty Mutual paid the attorney's fees of Segal, including those involved in filing against Dr. Joseph, constituted conduct so extreme and outrageous as to support a cause of action for intentional infliction of emotional distress against all three defendants. Such a cause of action has been recognized in Arizona and the definition contained in the Restatement of Torts, 2d § 46 has been specifically approved. *Savage v. Boies*, 77 Ariz. 355, 272 P.2d 349 (1954). Comment d to § 46 defines what is meant by extreme and outrageous conduct and provides, inter alia:

"Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'"

In our opinion, the filing of the third-party complaint seeking indemnity against Dr. Joseph is not within the purview of extreme and outrageous conduct as so de-

fined and therefore not within the scope of the tort, infliction of emotional distress.

## BAD FAITH

■ Dr. Joseph's claim for relief against Liberty Mutual alone is that Liberty Mutual breached the duty of good faith owed to its insured (Joseph) in permitting him to be brought into the malpractice suit and in paying the costs and attorney's fees incurred in filing the third-party action. As authority for his claim for relief based on the insurer's bad faith, Dr. Joseph has cited cases involving the "equality of consideration" doctrine applicable to an insurer's decisions with regard to settlement of a case. *General Accident Fire & Life Assurance Corp. v. Little,* 103 Ariz. 435, 443 P.2d 690 (1968); *Farmers Insurance Exchange v. Henderson,* 82 Ariz. 335, 313 P. 2d 404 (1957). Those decisions stand for the proposition that an insurance carrier must give equal consideration to its insured's interests as well as its own in deciding on a settlement and failure to do so will subject the insurance carrier to liability for a verdict in excess of policy limits. Dr. Joseph has also cited a California case in which an insured recovered compensatory and punitive damages against his insurance carrier on account of the latter's bad faith in failing to pay the policy proceeds the insured was entitled to. *Fletcher v. Western National Life Insurance Co.,* 10 Cal.App.3d 376, 89 Cal.Rptr. 78 (1970).

Obviously, the cited cases are dissimilar to the instant one but Dr. Joseph urges that the same principles of failure to exercise good faith should permit his recovery against Liberty Mutual. We do not agree.

Although the situation which occurred was an unusual and troublesome one for us to consider, and we find no judicial pronouncements on the issue involved, we do not believe bad faith was involved when Liberty Mutual failed to stop Segal from filing the third-party complaint. We have previously discussed the fact that probable cause existed and Dr. Joseph failed to show, other than by unsupported allegation,

that the suit was designed to prevent his testimony. In our opinion, Liberty Mutual was presented with a situation in which it had an obligation to defend Drs. Markovitz and Weinrach. The attorney hired by Liberty Mutual to represent them decided that their interests could best be protected by filing the third-party action against Dr. Joseph. It is true that Liberty Mutual did nothing to prevent Segal from taking such action and that another of its insureds thereby became a third-party defendant in the malpractice litigation. However, Liberty Mutual offered to defend him and to provide counsel.

Such facts do not alone establish bad faith. Liberty Mutual was in a situation where two of its insureds were exposed to potential liability in excess of policy limits. The two wished to seek indemnity against a former partner for a portion of the excess liability. The fact that that partner was also an insured placed Liberty Mutual in an unusual and awkward position but not one which, in our opinion, was indicative of bad faith.

## ATTORNEY'S FEES

■ Liberty Mutual's cross-appeal attacks the award of attorney's fees to Dr. Joseph for the defense of the third-party action. Liberty Mutual does not challenge the reasonableness of the fee nor its initial obligation under the insurance contract to provide Dr. Joseph with a defense. Liberty Mutual's position is that it became relieved of its duty to defend when Dr. Joseph refused to accept the attorney selected by Liberty Mutual.

It is clearly against public policy for one party to control both sides of litigation and under the provisions of the insurance contract, Liberty Mutual had the power to control the defense of its insureds. See, 44 Am.Jur.2d Insurance § 1524. To avoid a conflict, in offering counsel to Dr. Joseph, Liberty Mutual specifically waived its control over the defense of the action. However, despite this waiver of control, we believe the trial judge ruled correctly

in awarding attorney's fees. Liberty Mutual was in a conflict of interest situation and even with waiver of control, we believe public policy demands that Dr. Joseph be able to choose his own attorney without relieving Liberty Mutual of its contractual obligation under the policy to pay for the defense. See *O'Morrow v. Borad,* 27 Cal. 2d 794, 167 P.2d 483 (1946).

The judgment of the trial court is affirmed on all points.

JACOBSON, P. J., and SCHROEDER, J., concur.