OREGON NATURAL RESOURCES
COUNCIL, Plaintiff–Counter–
Defendant–Appellee,

v.

David MOHLA, etc., et al., Defendants.

and

AVISON TIMBER COMPANY, INC.,
Counterclaim Defendant–Third–
Party Plaintiff–Appellant,

v.

Andrew KERR, Third–Party
Defendant–Appellee.

No. 90–35401.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 9, 1991.

Decided Sept. 11, 1991.

William F. Lenihan, Schwabe, Williamson & Wyatt, Seattle, Wash., Mildred J. Carmack, Schwabe, Williamson & Wyatt, Portland, Or., for defendant-counterclaim-third party plaintiff-appellant.

Blair C. Stone and John W. Phillips, Heller, Ehrman, White & McAuliffe, Victor M. Sher, Sierra Club Legal Defense Fund, Seattle, Wash., for plaintiff-counter-defendant-appellee.

Before GOODWIN, ALARCON and HALL, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

Avison Timber Company, Inc., (Avison) appeals the district court's grant of Oregon Natural Resources Council's (ONRC) motion to dismiss Avison's counterclaim and third-party complaint. District court jurisdiction over the counterclaim and third-party complaint was pendent to federal question jurisdiction over ONRC's complaint under 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

I

On December 2, 1988, ONRC filed suit against the United States Forest Service seeking to enjoin the bidding on a timber contract for a tract of land in the Mt. Hood National Forest known as the Badger Resell. When ONRC learned that the contract had been awarded to Avison, ONRC amended the complaint, adding Avison as an indispensable party and seeking to enjoin logging of the Resell.

In February 1989, Avison filed counterclaims against ONRC, alleging abuse of administrative and judicial process and interference with business relations. ONRC moved to dismiss pursuant to Fed.R.Civ.P.

12(b)(6), claiming protection under the *Noerr–Pennington* doctrine. The district court dismissed the counterclaims on September 28, 1989, finding that ONRC's claims "involve the exercise of ONRC's right to petition the courts for redress against the government and are therefore protected by the First Amendment." The court found that Avison had not met the heightened pleading standards associated with the *Noerr–Pennington* doctrine.

In the original suit, the district court granted summary judgment to Avison and the Forest Service, finding that § 314 of the Forest and Rangeland Renewable Resource Planning Act, Pub.L. No. 100–446, 102 Stat. 1825 (1988), barred ONRC's challenge. We affirmed the district court's decision in a published opinion. *Oregon Natural Resources Council v. Mohla*, 895 F.2d 627 (9th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 2621, 110 L.Ed.2d 642 (1990).

## II

■ We review the district court's grant of ONRC's motion to dismiss de novo. *Boone v. Redevelopment Agency of San Jose*, 841 F.2d 886, 889 (9th Cir.), *cert. denied,* 488 U.S. 965, 109 S.Ct. 489, 102 L.Ed.2d 526 (1988). A motion to dismiss should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Normally we accept as true all of the plaintiff's factual allegations, along with all reasonable inferences

in the plaintiff's favor. *Hahn v. Codding*, 615 F.2d 830, 840 (9th Cir.1980).

■ Where a claim involves the right to petition governmental bodies under *Noerr–Pennington*, however, we apply a heightened pleading standard. In *Franchise Realty Interstate Corp. v. San Francisco Local Joint Executive Board*, 542 F.2d 1076 (9th Cir.1976), *cert. denied,* 430 U.S. 940, 97 S.Ct. 1571, 51 L.Ed.2d 787 (1977), we required that the plaintiffs satisfy more than the usual 12(b)(6) standard, holding that "a complaint must include allegations of the specific activities" which bring the defendant's conduct into one of the exceptions to *Noerr–Pennington* protection. *Id.* at 1082. This heightened level of protection accorded petitioning activity is necessary to avoid "a chilling effect on the exercise of this fundamental First Amendment right." *Id.* Conclusory allegations are not sufficient to strip a defendant's activities of *Noerr–Pennington* protection. *Boone*, 841 F.2d at 893.

## III

The *Noerr–Pennington* doctrine was originally promulgated to protect efforts to influence legislative or executive action from liability under the Sherman Act. *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); *United Mine Workers v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965).[1] The protection has been expanded to apply to petitions to courts and administrative agencies, *California Motor Transp. v. Trucking Unlimited*, 404 U.S. 508, 510, 92 S.Ct. 609, 611, 30 L.Ed.2d 642 (1972),[2] as

---

**1.** In *Noerr*, the Supreme Court was presented with a claim

that an association of railroads had violated the antitrust laws by engaging in a massive publicity campaign designed to influence legislative and executive action against the trucking industry. The Court determined that the railroads' activity did not fall within the ambit of the antitrust laws. It stressed the importance in a representative democracy of the right of persons to "freely inform the government of their wishes." 365 U.S. at 137, 81 S.Ct. at 529.... *Pennington* reaffirmed *Noerr*, holding that "[j]oint efforts to influence

public officials do not violate the antitrust laws even though intended to eliminate competition. Such conduct is not illegal, either standing alone or as part of a broader scheme itself violative of the Sherman Act." 381 U.S. at 670, 85 S.Ct. at 1593.

*In re Burlington Northern, Inc.*, 822 F.2d 518, 524 (5th Cir.1987), *cert. denied,* 484 U.S. 1007, 108 S.Ct. 701, 98 L.Ed.2d 652 (1988).

**2.** Courts have taken a narrower view of *Noerr–Pennington* protections where petitions to adjudicatory bodies are at issue, however. *Boone*, 841 F.2d at 896.

well as to preclude claims other than those brought under the antitrust laws. *See Franchise Realty,* 542 F.2d at 1082–83; *In re IBP Confidential Business Documents Litig.,* 755 F.2d 1300, 1312 (8th Cir.1985).

*Noerr–Pennington* protection is not absolute. The *Noerr* court recognized an exception where a publicity campaign, "ostensibly directed toward influencing governmental action ... is a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor." *Noerr,* 365 U.S. at 144, 81 S.Ct. at 533. In *Trucking Unlimited,* the Court elaborated on the limits of *Noerr–Pennington* protection, explaining that "there are ... forms of illegal and reprehensible practice which may corrupt the administrative or judicial process and which may result in antitrust violations." 404 U.S. at 513, 92 S.Ct. at 613.

Avison argues that *Noerr–Pennington* protection is inappropriate in this case because ONRC's suit against it falls within two of the examples of illegal or reprehensible activity noted in *Trucking Unlimited.* Avison alleges that the suit was part of a "pattern of baseless, repetitive claims" and that ONRC made knowing misrepresentations to the court. We address each allegation in turn.

### A

Avison's first allegation is that ONRC's suit was part of a pattern of baseless claims. Avison asserts that in 1988, "ONRC filed administrative appeals with the Forest Service of at least 216 resales of bought out and defaulted timber contracts in Oregon National Forests, including the Badger Resell," as part of a scheme "to misuse and abuse governmental and judicial processes for the sole purpose of delaying the sale of federal timber without regard to whether *bona fide* grounds for opposing such sales existed." It characterizes ONRC's filing of this lawsuit as part of this "string of baseless and repetitive actions."

■■■ The repeated filing of baseless claims without regard to their merits may indicate that the judicial and administrative processes have been abused. *Trucking Unlimited,* 404 U.S. at 513, 92 S.Ct. at 613; *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.,* 690 F.2d 1240, 1254 (9th Cir.1982), *cert. denied,* 459 U.S. 1227, 103 S.Ct. 1234, 75 L.Ed.2d 468 (1983). To state a claim under the sham exception, however, more is required than a bare allegation of a history of failed appeals. The earlier administrative appeals are relevant only to the extent that they demonstrate that ONRC was improperly motivated in filing its lawsuit against Avison. In *Pennington,* the Supreme Court noted that genuine petitioning activities are "not illegal, either standing alone *or as part of a broader scheme itself violative of the Sherman Act.*" 381 U.S. at 670, 85 S.Ct. at 1593 (emphasis added).

■■■ We therefore must examine whether Avison has sufficiently alleged that ONRC's lawsuit against it was a sham. *See In re Burlington Northern,* 822 F.2d 518, 526 (5th Cir.1987) ("The holding in *Pennington* requires attention to the narrow petitioning activity at issue. The fact finder must determine, *as to the particular petition,* whether the petitioner was engaged in a genuine attempt to influence governmental decisionmaking.") (emphasis added), *cert. denied,* 484 U.S. 1007, 108 S.Ct. 701, 98 L.Ed.2d 652 (1988).

Even though ONRC's attempt to enjoin logging of the Resell was defeated on summary judgment, *Noerr–Pennington* protection is appropriate so long as ONRC was genuinely seeking governmental action. *See Franchise Realty,* 542 F.2d at 1081 (The sham exception is "limited to situations where the defendant is not seeking official action ... so that the activities complained of are 'nothing more' than an attempt to interfere with the business relationships of a competitor."); *Coastal States Marketing v. Hunt,* 694 F.2d 1358, 1372 (5th Cir.1983) ("A litigant should enjoy petitioning immunity from the antitrust laws so long as a genuine desire for judicial relief is a significant motivating factor underlying the suit.").

As the Supreme Court has explained, "[t]he 'sham' exception to *Noerr* encompasses situations in which persons use the governmental *process*—as opposed to the *outcome* of that process—as an anticompetitive weapon." *City of Columbia v. Omni Outdoor Advertising, Inc.,* — U.S. ——, 111 S.Ct. 1344, 1354, 113 L.Ed.2d 382 (1991) (emphasis in original). Here, the mere filing of a lawsuit was insufficient to achieve ONRC's goal of preventing the sale and cutting of old growth timber. As Avison admits, ONRC was not merely attempting to keep Avison from cutting these trees, it was attempting to keep *anyone* from doing so. In order to succeed, ONRC needed the actual relief it was requesting from the courts. Thus, ONRC was not merely exploiting the governmental process; it was genuinely seeking judicial relief.[3]

Avison concedes that ONRC wanted the injunctive relief it requested in the underlying suit. But it contends that ONRC knew it would be unable to obtain such relief. According to Avison, "ONRC's complaint was filed with the knowledge it was baseless, with no expectation of obtaining the requested relief, but for the sole purpose of delaying and impeding Avison's logging operation through the pendency of the suit itself." This conclusory allegation fails to meet the heightened pleading standard of *Franchise Realty.*

In our opinion upholding summary judgment against ONRC's claim, we began by noting that "[t]his case requires us to resolve an issue we explicitly left open...." *Mohla,* 895 F.2d at 628. The opinion later recognized that the court was required "to grapple with section 314's extraordinary language...." *Id.* at 630. These statements indicate that the question of whether ONRC's challenge was barred by § 314 was a difficult, unresolved issue at the time ONRC filed its suit to enjoin logging of the Resell. In the face of this, Avison asserts, without any specifics, that ONRC knew its position was baseless. Avison has failed to plead with particularity that ONRC's suit to enjoin the logging was a sham.

This result is not changed by Avison's accusations regarding the earlier administrative appeals. Even if Avison is correct that the 216 administrative appeals constitute a pattern of baseless suits, it fails to allege with specificity how ONRC's lawsuit against it fits into that pattern. The existence of a series of baseless appeals does not in itself bring *this suit* within the sham exception. Thus, the mere allegation that ONRC lost a series of administrative appeals prior to bringing this suit is insufficient to avoid a motion to dismiss.

## B

Avison also alleges that ONRC should not be entitled to *Noerr–Pennington* protection because it knowingly presented misrepresentations to the court. "Misrepresentations, condoned in the political arena, are not immunized [by *Noerr–Pennington*] when used in the adjudicatory process." *Trucking Unlimited,* 404 U.S. at 513, 92 S.Ct. at 613.

Avison argues that it should survive a motion to dismiss because it has alleged specific misrepresentations. In response to

---

**3.** In addition, where the petitioner's goals are political rather than economic, protection is particularly appropriate. In *Allied Tube & Conduit Co. v. Indian Head, Inc.,* 486 U.S. 492, 108 S.Ct. 1931, 100 L.Ed.2d 497 (1988), the Supreme Court recognized that "the antitrust laws should not regulate political activities 'simply because those activities have a commercial impact.'" *Id.* at 507, 108 S.Ct. at 1941, (quoting *Noerr,* 365 U.S. at 141, 81 S.Ct. at 531). As an example of this, the Court pointed to *NAACP v. Claiborne Hardware Co.,* 458 U.S. 886, 914, 102 S.Ct. 3409, 3426, 73 L.Ed.2d 1215 (1982), where it had held that the First Amendment protected the nonviolent elements of a boycott organized by the NAACP. "Although the boycotters intended to inflict economic injury on the merchants, the boycott was not motivated by any desire to lessen competition or to reap economic benefits ... and the boycotters were consumers who did not stand to profit financially from a lessening of competition in the boycotted market." *Claiborne Hardware,* 458 U.S. at 914–15, 102 S.Ct. at 3426. Similarly, ONRC filed suit against the Forest Service in order to achieve a political goal of preventing the cutting of old-growth forest. The suit was not motivated by any anticompetitive purpose, except to the extent that the desires of the timber industry conflict with ONRC's political goal of preserving the forest.

ONRC's attempts to show that the alleged misrepresentations were not misrepresentations at all,[4] Avison argues that since this is an appeal from a motion to dismiss, its allegations must be accepted as true.

 Normally, when ruling on a motion to dismiss, all factual allegations of the party against whom the motion is made must be accepted as true. However, the heightened pleading standard of *Franchise Realty* would have no force if in order to satisfy it, a party could simply recast disputed issues from the underlying litigation as "misrepresentations" by the other party. *See Omni Resource Development Corp. v. Conoco, Inc.,* 739 F.2d 1412, 1414 (9th Cir. 1984) ("[N]othing more is alleged than the use of false affidavits in the state suit. That, however, is a charge that can easily be leveled, and it is thus insufficient by itself to overcome *Noerr–Pennington* immunity.") Avison's allegations of misrepresentation are therefore insufficient to overcome *Noerr–Pennington* protection.

AFFIRMED.

---

**4.** ONRC appears to be correct that none of Avison's claims of "misrepresentation" have any merit. For example, Avison listed as the "most significant" misrepresentation ONRC's claim that its appeal was site-specific. But not only was ONRC's appeal site-specific on its face, *see Mohla,* 895 F.2d at 630 ("[i]n its administrative appeal, ONRC challenged the site-specific Badger Resell EA"), but the question of whether ONRC's appeal was site-specific in fact was the very issue before the court. Thus, by claiming that this was a "misrepresentation," Avison is effectively restating its claim that ONRC knew that its suit was baseless.