## In re AMERICAN CONTINENTAL CORPORATION/LINCOLN SAVINGS & LOAN SECURITIES LITIGATION.

### LEXECON INC. and Daniel R. Fischel, Plaintiffs,

v.

### MILBERG WEISS BERSHAD HYNES & LERACH, a partnership; Cotchett, Illston & Pitre, a partnership; Greenfield & Chimicles, a partnership; and Patrick Coughlin, Blake Harper, William S. Lerach, Kevin P. Roddy, Leonard B. Simon, Melvyn I. Weiss, Jared Specthrie, Patricia Hynes, Michael C. Spencer, Stephen Steinberg, Joseph Cotchett, and Susan Illston, individually, Defendants.

MDL No. 834.

Civ. No. 93–1087 PHX JMR.

United States District Court, D. Arizona.

Nov. 29, 1993.

III, Butler & Stein, P.C., Tucson, AZ, for plaintiffs.

Michael Meehan, Meehan & Associates, Tucson, AZ, Jerold S. Solovy, Ronald L. Marmer, Jenner & Block, Chicago, IL, for defendants Milberg.

Gerald Maltz, Miller, Pitt & McAnally, P.C., Tucson, AZ, Joseph W. Cotchett, Cotchett, Illston & Pitre, Burlingame, CA, for defendants Cotchett, Illston & Pitre, Joseph W. Cotchett and Susan Illston.

Ted A. Schmidt, Peter Akmajian, O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, Tucson, AZ, for defendants Greenfield and Chimicles.

## ORDER

ROLL, District Judge.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Lexecon is an economic consulting firm, some of whose employees, including Plaintiff Daniel Fischel, testify frequently as experts on certain economic issues. Fischel is a tenured professor at the University of Chicago Law School.[1] Defendants Milberg Weiss Bershad Hynes & Lerach, Cotchett, Illston & Pitre, and Greenfield & Chimicles are law firms that specialize in securities class action litigation.[2] As such, they were co-counsel for class plaintiffs in *Shields v. Keating, et al.*, MDL No. 834, a multi-district case litigated in the district of Arizona.

*Shields* was a class action brought on behalf of purchasers of securities issued by Keating's company, American Continental Corporation ("ACC" or "ACC/Lincoln"). The class sought over $360 million in pre-trebled damages and unspecified punitive damages against a variety of defendants claiming that they had conspired to violate securities and racketeering laws by misleading investors with respect to the safety of

Alan N. Salpeter, Michele Odorizzi, Mayer, Brown & Platt, Chicago, IL, A. Bates Butler,

1. Plaintiffs will be referred to in the singular as "Lexecon" throughout the text.

2. Defendants break into several distinct groups. In addition to the firm, the Milberg Weiss defendants refers to active partners Patrick Coughlin, Blake Harper, William S. Lerach, Kevin P. Roddy, Leonard B. Simon, Melvyn I. Weiss, Patricia

Hynes, Michael C. Spencer and former partners Stephen Steinberg and Jared Specthrie. The Cotchett, Illston & Pitre defendants include the firm and its partners Joseph Cotchett and Susan Illston. The Greenfield & Chimicles defendant refers exclusively to the firm.

ACC securities. In September 1989, the accounting firm of Arthur Young & Co., one of the *Shields* defendants, retained Lexecon and Fischel as experts to assist in preparing its defense.[3]

In March 1990, defendants (as class counsel) sought leave to file a fifth amended complaint in order to add both Lexecon and Fischel as parties. Defendants based the class claim against Lexecon and Fischel on certain reports prepared by that organization on behalf of ACC/Lincoln for submission to federal regulators. The proposed Fifth Amended Complaint alleged that Lexecon and Fischel had learned the "true" nature of ACC/Lincoln's business practices, but nevertheless assisted the thrift in its efforts to keep regulators at bay while it continued to sell worthless debentures. The motion for leave to file an amended complaint was denied in May of 1990.

Approximately six months after this ruling, defendants renewed their efforts to bring Lexecon into the *Shields* litigation. Defendants created a purported "Sixth Amended Complaint" naming Lexecon and Fischel as defendants. This document was circulated to dozens of Lexecon's potential clients—individual lawyers, law firms, and corporations—not all of whom were prospective parties to the complaint.[4] This pleading was never filed. A few days later, however, a different version of the proposed "Sixth Amended Complaint" was filed, this time deleting Fischel as a named defendant.[5] On January 30, 1991, leave to file was granted.

According to Lexecon, defendants' purpose behind involving Lexecon and Fischel in the *Shields* litigation was threefold: (1) to extract false testimony implicating other *Shields* defendants, (2) prevent Arthur Young & Co. from using Lexecon as an expert in *Shields,* and (3) "to make Lexecon in general and Fischel in particular far less attractive to potential clients as expert witnesses." Lexecon claims that defendants were making good on Melvyn Weiss's threat to "destroy" Fischel because of his testimony widely believed to have produced several big victories against clients represented by Milberg Weiss.

The *Shields* case went to trial in the summer of 1992. After all of the evidence was in following a four-month trial but before closing arguments, in what was termed a "resolution," Lexecon was dismissed from the case.[6] As part of the resolution, *Shields* defendant Touche Ross agreed to settle with the class for $7.5 million and to perform certain claims administration services. The claims services would be subcontracted to Lexecon. In exchange, the court would enter a voluntary dismissal without prejudice as to Lexecon. The parties agreed to execute a dismissal with prejudice to be held by the trial judge, the Honorable Richard M. Bilby, and made part of the record in the event it became necessary to show that all claims against Lexecon were barred.

After extended negotiations facilitated by Judge Bilby, the parties carefully crafted the resolution in such a way as to specifically avoid the appearance of settlement. Lexecon's counsel stated on the record that Lexecon decided to provide a benefit to the class because it was persuaded that its services may have been misused by ACC/Lincoln, but qualified its position by noting that Lexecon could not agree to provide its services as a quid pro quo for dismissal because settling would subject its experts to unfair cross-examination with respect to credibility and expertise.

The resolution fell apart shortly after having been entered into. Class counsel explained to Judge Bilby that they were concerned in retrospect that Lexecon was unable to perform the work. At this point, Lexecon had spent $123,000 for the first

---

**3.** Prior to the attempted amendment, Lexecon had been retained by *Shields* defendant Arthur Young & Co. as an expert. Lexecon's services were thereafter terminated.

**4.** At oral argument, counsel for Milberg Weiss defended this action my stating that the complaint was only distributed to the service list and "the world is my service list.... [t]hey are all potential clients of Jenner, Block and Solovy, but the service list is the service list...."

**5.** Fischel does appear in the body of the complaint and is referred to as a defendant.

**6.** Lexecon's motions for summary judgment and directed verdict were denied.

portion of the claims services. Class counsel suggested instead that a third party be retained at Lexecon's expense. Fischel responded by issuing a check to the class for $593,960 which, combined with the monies previously spent, represented the total amount Lexecon had earned from its work with ACC/Lincoln. In a letter accompanying the payment, Fischel stated that Lexecon had been improperly prevented from performing services for the class and that it had decided to benefit the class instead by returning its professional fees.

In November of 1992, Lexecon filed a complaint in the Northern District of Illinois alleging malicious prosecution, abuse of process, defamation, and other commercial disparagement torts. It is Lexecon's position that it had no choice but to sue due to defendants' improper collateral use of Lexecon's involvement in *Shields*. The case was thereafter referred to the multi-district litigation panel which determined that the matter was properly considered a part of the *American Continental Corporation/Lincoln Savings and Loan Litigation.* The case is now pending before this Court.

## MOTIONS TO DISMISS

■ Defendants, upon individual and joint motion, seek dismissal of the amended complaint for failure to state a claim upon which relief can be granted. A complaint should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) when, accepting all well-pleaded allegations of fact as true, and drawing all reasonable inferences in favor of the plaintiff, no relief could be granted under any set of facts that might be proved. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). "Where a claim involves the right to petition governmental bodies ... we apply a heightened pleading standard." *Oregon Natural Resources Council v. Mohla*, 944 F.2d 531, 533 (9th Cir.1991).

### I.

### MALICIOUS PROSECUTION

A. *Choice of Law.*

■ Count One of the Amended Complaint asserts a claim of malicious prosecu-

tion under Arizona law. Defendants argue that Illinois law governs the disposition of all counts of the amended complaint, including the malicious prosecution claim. A transferee court must follow the choice of law rules of the transferor court. *Ferens v. John Deere Co.*, 494 U.S. 516, 110 S.Ct. 1274, 108 L.Ed.2d 443 (1990) (rule announced in context of a § 1404(a) transfer for "the convenience of parties and witnesses"). As a federal court exercising its diversity jurisdiction, the Illinois district court would have applied the substantive law of Illinois, including the Illinois choice of law rules. *Goldberg v. Medtronic, Inc.* 686 F.2d 1219, 1225 (7th Cir. 1982). Illinois has adopted a "most significant relationship" test for determining the substantive law applicable in tort cases. *Ingersoll v. Klein*, 46 Ill.2d 42, 262 N.E.2d 593 (1970).

■ In deciding which state has the most significant contacts, courts look to (1) the domicile of the parties; (2) the place where the injury occurred; (3) the place where the conduct causing the injury occurred; and (4) the place where the relationship, if any, between the parties is centered. *Miller v. Long–Airdox Co.*, 914 F.2d 976, 978 (7th Cir.1990). "Illinois law presumes that the law of the state where the injury occurred will govern unless another state has a more significant relationship to the occurrence or to the parties involved." *Id.* (internal citations omitted). *See also Restatement (Second) of Conflicts of Laws* § 155 (1971) ("The rights and liabilities of the parties for malicious prosecution or abuse of process are determined by the local law of the state where the proceeding complained of occurred, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6....").

■ To defeat the general presumption that Arizona has the greater interest, defendants claim that none of the parties is a citizen of Arizona,[7] the alleged injuries occurred in Illinois, and the parties' relation-

7. The interest of the state where the plaintiff resides is not more significant than the state

ship is centered in Illinois. This is insufficient rebuttal, however. All defendants have really shown is that the parties have engaged in a nationwide practice and their contacts are vast. They have not shown that between Arizona and Illinois, Illinois has a greater interest in the outcome of this case. Because the *Shields* case was prosecuted in Arizona and particularly because the complaint against Lexecon was filed here, the malicious prosecution and abuse of process counts are governed by Arizona state law. *See Engel v. CBS Inc.*, 981 F.2d 1076 (9th Cir.1992) (New York state's interests would be impaired if litigants practicing in New York federal court were not subject to New York's restrictive policy with respect to malicious prosecution actions).

## B. *Elements of the Tort.*

■ To sustain a claim for malicious prosecution, the "[p]laintiff must prove defendant (1) instituted a civil action which was, (2) motivated by malice, (3) begun without probable cause, (4) terminated in plaintiff's favor, and (5) damaged plaintiff." *Bradshaw v. State Farm Mutual Auto Ins. Co.*, 157 Ariz. 411, 417, 758 P.2d 1313, 1319 (1988). Although defendants concede nothing, the only prongs seriously in contention are numbers three and four.[8]

Under Arizona law, the test for whether probable cause exists is both subjective [9] and objective. *Id.* "The initiator of the action must honestly *believe* in its possible merits; and, in light of the facts, that *belief must be objectively reasonable.*" *Id.* (emphasis in original).

■ This formulation is no longer viable under recent Supreme Court authority. In *Professional Real Estate v. Columbia Pic-*

*tures Industries,* —— U.S. ——, ——, 113 S.Ct. 1920, 1925, 123 L.Ed.2d 611 (1993), the Supreme Court addressed the issue of whether litigation that is "not significantly motivated by a genuine desire for judicial relief" can be a "sham" and actionable under the antitrust laws. The Court stated that "an objectively reasonable effort to litigate cannot be a sham regardless of subjective intent." *Id.* at ——, 113 S.Ct. at 1926. In other words, as long as the underlying lawsuit is not objectively baseless, the plaintiff cannot be held liable for bringing the suit even if the plaintiff's motives were malicious. *Id.*

■ The *Professional Real Estate* decision is the most recent development in the ongoing evolution of the *Noerr–Pennington* doctrine. *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); *United Mine Workers v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965). *Noerr–Pennington* shields efforts to influence legislative or executive action from liability under the anti-trust laws, with the exception of those deeds "ostensibly directed toward influencing governmental action ... [as] a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationship of a competitor." *Noerr*, 365 U.S. at 144, 81 S.Ct. at 533. The protection has been extended to litigation and includes claims other than those brought under the antitrust laws. *California Motor Transp. v. Trucking Unlimited,* 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972); *Franchise Realty, Etc. v. S.F. Loc. Joint Executive,* 542 F.2d 1076 (1976), *cert. denied,* 430 U.S. 940, 97 S.Ct. 1571, 51 L.Ed.2d 787 (1977). Indeed, "while the doc-

---

where the underlying litigation was prosecuted. *R.J.R. Services, Inc. v. Aetna Cas. & Surety Co.*, 895 F.2d 279, 282 n. 4 (7th Cir.1989).

8. Because the Court finds Lexecon has failed to sufficiently plead the probable cause requirement, Count One is deficient as a matter of law and the Court need not reach the favorable termination factor.

9. Lexecon cites three occasions when lawyers from each of the defendant firms acknowledged the absence of merit in the complaint against

Lexecon. The Amended Complaint alleges that Joseph Cotchett admitted to Lexecon's former attorney, Stephen C. Neal, that there was no basis for the claims against Lexecon and that the decision to sue was based on Milberg's animus. Further, the Amended Complaint states that Stephen Steinberg, a Milberg Weiss partner, related to Fischel that he believed it "wrong" to bring Lexecon into the suit. Third, a Greenfield & Chimicles partner suggested to Fischel that the lawsuit against Lexecon was the result of a vendetta on Milberg's part.

trine evolved in the context of anti-trust litigation ... the doctrine has been applied to protect the First Amendment right to petition against claims of tortious interference with business relations." *Havoco of America, Ltd. v. Hollobow*, 702 F.2d 643, 649 (7th Cir.1983) (citations omitted).

In *Professional Real Estate*, the Supreme Court articulated a two-part test to determine whether activity otherwise protected under *Noerr–Pennington* loses its immunity under the sham exception:

> First, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized.... Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation. Under this second part of our definition of sham, the court should focus on whether the baseless lawsuit conceals an attempt to interfere directly with the business relationships of a competitor through the use of the governmental process—as opposed to the outcome of that process—as an anti-competitive weapon.

*Professional Real Estate*, —— U.S. at —— 113 S.Ct. at 1922.

Defendants argue that *Professional Real Estate* renders the subjective branch of the *Bradshaw* probable cause test unconstitutional. Lexecon responds by claiming that *Noerr–Pennington* is essentially a principle of statutory construction and that *Professional Real Estate* does not constrict the permissible limits of common law torts. The Ninth Circuit in *Oregon Natural Resources* held that when probable cause exists for the filing of the underlying suit, the *Noerr–Pennington* doctrine bars all types of state law claims challenging that suit, specifically referring to abuse of process and tortious interference claims. *Oregon Natural Resources Counsel v. Mohla*, 944 F.2d 531, 532–34 (9th

Cir.1991). Subjective intent is only relevant if the objective prong is satisfied.

■■■ To survive the motion to dismiss, therefore, Lexecon must show that the *Shields* litigation was objectively baseless and this it cannot do. Although the Court does not find as defendants would have it that the related doctrines of law of the case and collateral estoppel ordain this result, the Court has independently concluded that no reasonable person could find that the Sixth Amended Complaint lacked objective probable cause.[10] The record before this Court as recited in the *Shields* rulings is highly persuasive evidence that the case against Lexecon meets the probable cause threshold.

## II.

## ABUSE OF PROCESS

■■■ Liability for abuse of process occurs when "[o]ne ... uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed...." *Restatement (Second) of Torts* § 682 (1977). "The essential elements of the tort include a wilful act in the use of judicial process for an ulterior purpose not proper in the regular conduct of the proceedings." *Morn v. City of Phoenix*, 152 Ariz. 164, 166, 730 P.2d 873, 875 (App.1986). "Abuse of process ... is not commencing an action or causing process to issue without justification," *Prosser & Keeton On Torts* § 121 at 897 (5th ed. 1984), but requires an overt act other than the initiation of a lawsuit to effect the illegitimate end. *Joseph v. Markovitz*, 27 Ariz.App. 122, 551 P.2d 571 (1976). "It is the subsequent misuse which constitutes the misconduct for which liability is imposed." *Nienstedt v. Wetzel*, 133 Ariz. 348, 353, 651 P.2d 876 (App.1982). Without more, an abuse of process claim will not lie even when process was issued without justification. *Morn*, 152 Ariz. at 167, 730 P.2d at 874.

10. *See Enrich v. Touche Ross & Co.*, 846 F.2d 1190, 1198 (9th Cir.1988) (court considering a Rule 12(b)(6) motion properly may look beyond the complaint to items in the record of the case, or to matters of general public record); *Mack v.*

*South Bay Beer Distrib., Inc.*, 798 F.2d 1279, 1282 (9th Cir.1986) (a motion to dismiss was not converted to a motion for summary judgment when court looked beyond the pleadings to matters of public record).

■■■■■ Defendants first argue that Lexecon's abuse of process claim is duplicative of the malicious prosecution count. Although closely related to malicious prosecution, the tort of abuse of process serves to protect different interests.[11] As the leading authority explains:

> The action for malicious prosecution, whether it be permitted for criminal or civil proceedings, has failed to provide a remedy for a group of cases in which legal procedure has been set in motion in proper form, with probable cause, and even with ultimate success, but nevertheless has been perverted to accomplish an ulterior purpose for which it was not designed. In such cases, a tort action has been developed for what is called abuse of process.

*Prosser and Keeton*, § 121 at 897. Notwithstanding the different purposes served by the two torts, defendants are correct that something more than filing the complaint is required for Lexecon to make a prima facie showing.

■■■■■ Lexecon's additional allegations involve defendants' purported request for Lexecon to implicate others involved with American Continental and the subsequent collateral use of the *Shields* complaint for impeachment purposes in unrelated litigation. First, pre-process activities do not satisfy the pleading requirement.[12] The "threat of suit cannot constitute a 'wilful act' for the tort," *Blue Goose Growers, Inc. v. Yuma Groves, Inc.*, 641 F.2d 695, 697 (9th Cir.1981), because "an actual use of the suit" is required. *Joseph*, 27 Ariz.App. at 126, 551 P.2d 571. Lexecon does not dispute this general principle only its application here asserting that defendant's wilful acts occurred after process was invoked.

■■■■ Under Arizona law, the term process "has been interpreted broadly, and encompasses the entire range of procedures inci-

dent to the litigation process." *Nienstedt*, 133 Ariz. at 352, 651 P.2d at 880 (abuse of process principles apply to case where ulterior purpose was to expose injured party to attorneys' fees and costs). The *Nienstedt* court enumerated the following as examples of process: "the noticing of depositions, the entry of defaults, and the utilization of various motions such as motions to compel production, for protective orders, for change of judge, for sanctions and for continuances." *Nienstedt*, 133 Ariz. at 352–53, 651 P.2d at 880–81. Even under *Nienstedt*'s liberal definition, however, the filing of the motion for leave to file the Fifth Amended Complaint does not constitute process. The motion was denied and summons did not issue.

Lexecon additionally claims that post-process misconduct occurred through defendants' collateral use of the *Shield*'s complaint for impeachment purposes in other litigation.[13] *Prosser & Keeton* equates special advantage with extortion. *Prosser & Keeton*, § 121 at 898. Defendants' actions in this regard do not constitute the impermissible "special advantage" necessary to support the tort. Accordingly, Count Two must also be dismissed.

## III.

## INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

■■■■■ Illinois common law tortious interference with prospective economic advantage requires: (1) a reasonable expectation on the plaintiff's part of entering into a valid business relationship; (2) purposeful interference and defeat of plaintiff's legitimate expectancy by defendant; and (3) damage. *Philip I. Mappa Interests Ltd. v. Kendle*, 196 Ill.App.3d 703, 143 Ill.Dec. 936, 939, 554

---

11. Assuring continued access to the courts is an important consideration limiting liability. 1 F.V. Harper, F.J. James & O.S. Grey, *The Law of Torts*, § 4.9 (2d ed. 1986).

12. Class plaintiff's "Motion to File Fifth Amended Complaint" was filed with the court in March of 1990. Defendants' alleged extortion attempt whereby they would withdraw the complaint in exchange for damaging testimony by Lexecon

against other *Shields* defendants occurred the following month.

13. In an order dated December 31, 1992, Judge Bilby held that the allegedly improper cross-examination of Lexecon experts was "in accordance with the agreement reached with Lexecon in MDL 834 in every respect."

N.E.2d 1008, 1011 (1990). In those cases in which the defendant acted with a qualified privilege or justification, the plaintiff bears the additional burden of pleading actual malice. *Id.* "Bare allegations of actual malice, unsupported by facts, are not sufficient to negate the protections of privilege or justified conduct." *Id.* It is critical to note, however, that the claim must be based on more than the alleged wrongful filing of a lawsuit. *Havoco,* 702 F.2d at 647.

▮ The well-pleaded facts in support of Count Three are as follows. Defendants' interference with Lexecon's expectations began with the publication of the purported Sixth Amended Complaint to Lexecon's clients and prospective clients. Defendants made other public and private statements at a press conference and at a seminar impugning Lexecon's ability and integrity. Defendants discouraged their colleagues from retaining Lexecon and interfered with Lexecon's business arrangements with Professor Sidney Davidson. Malice, Lexecon claims, is present through its allegations that defendants jointly and severally conspired to destroy Lexecon and Fischel.

Defendants again rely upon the *Noerr–Pennington* doctrine and allege that they are immune from liability. However, the predicate acts for liability for this count are not based on the filing of the *Shields* lawsuit but upon the dissemination of the purported Sixth Amended Complaint that was never filed and substantively redacted prior to actual filing. The Court does not even reach the *Noerr–Pennington* analysis on these facts.

Count Three properly states a claim for relief and will not be dismissed.

## IV.

## DEFAMATION

Count Four of Lexecon's amended complaint alleges a cause of action for defamation and libel. Lexecon describes five specific circumstances when defendants made false and defamatory statements: (1) circulation of the proposed Sixth Amended Complaint, (2) statements made by defendant Patrick Coughlin of Milberg Weiss to the press that plaintiff Fischel had made the "biggest mistake any guy made in the country" in supposedly reaching the conclusion that Lincoln Savings was safe,[14] (3) statements by defendant Lerach of Milberg Weiss at a seminar maintaining that Fischel had given Charles Keating a "clean bill of health," (4) continuing statements made to Lexecon's prospective clients that Lexecon "carried too much baggage to be effective expert witnesses," (5) a letter authored by defendant Kevin Roddy of December 14, 1992 to the *National Law Journal* stating that Lexecon "settled" the *Shields* case and had paid $700,000 "to date." The letter further stated that Lexecon was guilty of "wrongful activities on behalf of" a convicted felon and "fraudulent dealings with regulators" and suggested that Judge Bilby found Lexecon guilty of the allegations.

▮ To make out a claim for defamation, the plaintiff must set forth sufficient facts to show that the defendant made a false statement concerning plaintiff, that there was an unprivileged publication to a third party with fault by the defendant, and that the publication caused damage to the plaintiff. *Krasinski v. United Parcel Service, Inc.,* 124 Ill.2d 483, 125 Ill.Dec. 310, 313, 530 N.E.2d 468, 471 (1988); *Restatement (Second) of Torts* § 558 (1977). A statement is considered to be defamatory if it "tends to cause such harm to the reputation of another that it lowers that person in the eyes of the community or deters third persons from associating with [that person]." *Homerin v. Mid–Illinois Newspapers,* 245 Ill.App.3d 402, 185 Ill.Dec. 362, 363, 614 N.E.2d 496, 497 (1993).

▮ Lexecon claims that defendants' statements are defamatory per se. Defamation per se occurs when the defamatory character is apparent on the face of the statements, and includes those "words that prejudice a party, or impute lack of ability in [that person's] trade, profession or business."

---

**14.** In the reports prepared at the behest of ACC/Lincoln Savings, Lexecon opined that "Lincoln is sound" and is "safer" than other comparable thrift institutions. *In re American Continental Corp./Lincoln S & L Sec. Litig.,* 794 F.Supp. 1424, 1448 (D.Ariz.1992).

*Kolegas v. Heftel Broadcasting Corp.*, 154 Ill.2d 1, 180 Ill.Dec. 307, 312, 607 N.E.2d 201, 206 (1992). Per se statements are so obvious and materially harmful to the plaintiff that injury to the plaintiff's reputation may be presumed. *Id.*

The Court finds that the only allegations which can survive defendants' motions to dismiss are those based upon the distribution of the proposed Sixth Amended Complaint and the Roddy letter. The other predicate acts are not factual assertions and, for the following reasons, are entitled to constitutional protection.[15]

The Supreme Court has held that statements that do not contain factual assertions are protected under the First Amendment and may not be the basis of a defamation action. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19, 110 S.Ct. 2695, 2706, 111 L.Ed.2d 1 (1990). The test to determine whether a defamatory statement is constitutionally protected is a restrictive one; only those statements that "cannot 'reasonably [be] interpreted as stating actual facts'" are entitled to protection. *Id.* at 20, 110 S.Ct. at 2707 (quoting *Hustler Magazine v. Falwell*, 485 U.S. 46, 50, 108 S.Ct. 876, 879, 99 L.Ed.2d 41 (1988)). Defendants describe their statements as "no more than a lawyer's 'expression of [his] opinion regarding his client's allegations against' Lexecon, as anyone reading or hearing the statements would have understood." The Court agrees.

## V.

## COMMERCIAL DISPARAGEMENT

Defendants strongly contend that the Illinois common law cause of action for commercial disparagement has been preempted in its entirety by the enactment of the state Deceptive Trade Practices Act.[16] *National Educational Advertising v. Cass Student Advertising, Inc.*, 454 F.Supp. 71, 73 (N.D.Ill.1977). The Act prohibits false or misleading misrepresentation[s] of fact "disparaging the" goods, services or business of another. 815 ILCS § 510/2(8); *Maytag Co. v. Meadows Mfg. Co.*, 35 F.2d 403 (7th Cir. 1929) (disparagement by competitors subject to injunction), *cert. denied*, 281 U.S. 737, 50 S.Ct. 250, 74 L.Ed. 1151 (1930). The Act does not, in fact, preempt the common law tort; rather, its intent is to supplement the available remedies. *See* 815 ILCS § 510/3 ("The relief provided in this Section is in addition to remedies otherwise available against the same conduct under the common law."). In discussing the Act, one court noted that it was not intended to be a consumer protection statute, but, rather, was meant to prohibit unfair competition. As such, the Act does not provide a cause of action for damages, but does authorize a private suit for injunctive relief. *Disc Jockey Referral Network, Ltd. v. Ameritech Pub. of Illinois*, 230 Ill.App.3d 908, 172 Ill.Dec. 725, 596 N.E.2d 4, *appeal denied*, 146 Ill.2d 625, 176 Ill.Dec. 796, 602 N.E.2d 450 (1992).

Although conflicting case law abounds, most courts to consider the issue have concluded that a common law cause of action for *damages* does exist. *See Genelco, Inc. v. Bowers*, 181 Ill.App.3d 1, 129 Ill.Dec. 733, 536 N.E.2d 783, *appeal denied*, 127 Ill.2d 615, 136 Ill.Dec. 585, 545 N.E.2d 109 (1989); *Crinkley v. Dow Jones & Co.*, 67 Ill.App.3d 869, 24 Ill.Dec. 573, 578, 385 N.E.2d 714, 719 (1978)

---

**15.** The Court rejects defendants' argument that their statements made in reference to Lexecon are absolutely shielded as comments made in the course of a judicial proceeding. *Skopp v. First Fed. Savings*, 189 Ill.App.3d 440, 136 Ill.Dec. 832, 836, 545 N.E.2d 356, 360 (1989) ("An absolute privilege protects anything said or written in a legal proceeding" as long as the "communication pertains to the litigation."). The privilege is not as broad as defendants maintain. For instance, the communication must be "pertinent and material" and be aimed at individuals with a direct connection to the proceedings. *See Kleier Advertising, Inc. v. Premier Pontiac, Inc.*, 921 F.2d 1036, 1043 (10th Cir.1990). Statements

made to the media have been rejected as covered by the privilege. *See Green Acres Trust v. London*, 141 Ariz. 609, 688 P.2d 617, 622–23 (1984). In an analogous matter, the Supreme Court recently ruled that a prosecuting attorney's allegedly false statements made during a press conference were entitled to only qualified immunity from section 1983 liability. *Buckley v. Fitzsimmons*, —— U.S. ——, 113 S.Ct. 2606, 2618, 125 L.Ed.2d 209 (1993).

**16.** The common law tort of commercial disparagement applies to those statements which demean the quality of one's goods or services.

(strongly suggesting that Illinois recognizes the common law tort despite enactment of Deceptive Trade Practices Act). *But see Magid Mfg. v. U.S.D. Corp.*, 654 F.Supp. 325, 333 (N.D.Ill.1987) ("In Illinois, however, there is no common law cause of action for commercial disparagement.").

In light of the specific savings clause included in the Illinois statute, Lexecon's position is correct.

## VI.

### COMMERCIAL DISPARAGEMENT UNDER THE ILLINOIS ACT

In Count Six, Lexecon seeks relief pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505 *et seq.* The Act prohibits unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce. 815 ILCS § 505/2. The Act is to be "liberally construed to effect the purposes thereof." 815 ILCS § 505/11a.

■ Defendants first claim a First Amendment privilege relying upon the arguments discussed above. *See Skopp v. First Fed. Sav.*, 189 Ill.App.3d 440, 136 Ill.Dec. 832, 545 N.E.2d 356, 360 (1989). Although the privilege may cover the statements made during the collateral litigation, it does not protect defendants from liability created from distribution of the proposed Sixth Amended Complaint.

■ Second, defendants maintain that Lexecon does not state a claim because it lacks standing to pursue a suit under the Act. Defendants claim that Lexecon is not a "consumer" in that it neither purchased or contracted for goods or services from the defendants nor alleged any effect on competition or consumer protection concerns. Standing, however, is given to all persons. 815 ILCS § 505/10(a). Persons are defined to include partnerships, corporations, companies, and business entities and associations. 815 ILCS § 505/1(c); *Scott v. Cardet International, Inc.*, 24 Ill.App.3d 740, 321 N.E.2d 386, 392 (1974) (holding that a 1973 amendment to the Act extended protection to businesspersons). However, "liability under the Consumer

Fraud Act [is limited] to conduct that implicates consumer protection concerns." *Hill v. Names & Addresses, Inc.*, 212 Ill.App.3d 1065, 157 Ill.Dec. 66, 82, 571 N.E.2d 1085, 1101 (1991).

■ "[W]here the dispute involves two businesses who are not consumers, the proper test is ... whether the alleged conduct involves trade practices addressed to the market generally or otherwise implicates consumer protection concerns." *Downers Grove Volkswagen, Inc. v. Wigglesworth Imports, Inc.*, 190 Ill.App.3d 524, 137 Ill.Dec. 409, 417, 546 N.E.2d 33, 41 (1989). As a non-consumer business, Lexecon must allege a violation causing at least an indirect consumer effect. *Jays Foods, Inc. v. Frito–Lay, Inc.*, 664 F.Supp. 364, 368–69 (N.D.Ill.1987).

In support of this count, Lexecon states that "[t]he amended complaint alleges that defendants falsely disparaged plaintiffs' services in order to 'destroy' a formidable and successful adversary in litigation. The resulting loss of business not only injured plaintiffs, but also consumers who were improperly dissuaded from using Lexecon's services." This sufficiently alleges a detrimental effect on Lexecon's ability to compete in the marketplace.

■ Third, defendants argue that even if Lexecon has standing to sue, the practice of law is immune from a Consumer Fraud Act violation. *Guess v. Brophy*, 164 Ill.App.3d 75, 115 Ill.Dec. 282, 285, 517 N.E.2d 693, 696 (1987), *appeal denied*, 121 Ill.2d 569, 122 Ill.Dec. 437, 526 N.E.2d 830 (1988). This rule prevents the bringing of a malpractice claim pursuant to the statute; it does not, however, protect those engaged in the business of law. *Gadson v. Newman*, 807 F.Supp. 1412 (C.D.Ill.1992). Accepting Lexecon's pleadings as true as the Court must, Lexecon states a claim pursuant to the Act.

### CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' joint and individual motions to dismiss are **GRANTED IN PART** and Count One and Count Two of Plaintiffs' Amended Complaint are **DISMISSED.** Defendants' joint

and individual motions to dismiss Count Four are **GRANTED IN PART** as set forth above. In all other respects, Defendants' joint and individual motions are **DENIED**.