Ransom GIBSON, et al., Plaintiffs,

v.

**CITY OF ALEXANDRIA,**
**et al., Defendants.**

Civ. A. No. 94–373–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

June 13, 1994.

Beverly A. Moses, Arlington, VA, for plaintiffs Ransom and Lena Gibson.

Ignacio B. Pessoa, Asst. City Atty., Philip Gaynn Sunderland, Office of the City of Alexandria, Alexandria, VA, for defendants except Kuckro, Del Ray Citizens Ass'n.

Victor Michael Glasberg, Victor M. Glasberg & Associates, Alexandria, VA, for Rod Kuckro.

Barbara P. Beach, Beach, Butt & Associates, P.C., Alexandria, VA, for Del Ray Citizens Ass'n.

## MEMORANDUM OPINION

BRINKEMA, District Judge.

This matter is before the Court on defendant Del Ray Association's and defendant Rod Kuckro's Motion to Dismiss. For the reasons stated herein, defendants' motions are GRANTED. Additionally, sanctions are imposed against plaintiffs' counsel pursuant to Fed.R.Civ.P. 11 and Virginia Code § 8.01-271.1 and attorneys' fees are awarded against plaintiffs under 42 U.S.C. § 1988.

On March 4, 1994, Defendant Kuckro removed plaintiffs' civil action from the Alexandria Circuit Court pursuant to 28 U.S.C. § 1441(b) because he had been sued, *inter alia*, for violations of 42 U.S.C. §§ 1983 and 1985. In their complaint, plaintiffs, who own a convenience store located at 201 E. Hume Avenue, Alexandria, Virginia, sued the City of Alexandria, its City Council and many of its individual members, the City Manager, and the Alexandria Planning Commission (Planning Commission), as well as the Del Ray Citizens Association (Association) and its president, Rod Kuckro.

At the heart of this lawsuit is a zoning limitation on plaintiffs' property. Plaintiffs allege that, since 1930, their property has been used as a neighborhood grocery store. (¶ 16). In 1951, the City Council zoned the property for residential use but allowed forty years in which to terminate the non-residential use of the property. (¶ 18). The plaintiffs purchased the property in 1982, without knowing about the zoning restriction, and have continued to operate the grocery store through the present. (¶ 21).

Plaintiffs allege that on October 28, 1990, as the end of the forty-year grace period approached, defendant Kuckro demanded that they stop selling single containers of beer and fortified wine. Plaintiffs petitioned for rezoning of their property to "commercial status." (¶ 25). On December 3, 1991, the Planning Commission held public hearings on plaintiffs' application. At that hearing, representatives of the Association testified that they would support plaintiffs' application for a special use permit (SUP) only upon condition that the store would not sell single containers of beer and fortified wine. (¶ 31). Plaintiffs objected to that restriction. On December 14, 1991 at a public hearing before the City Council, defendant Kuckro, as president of the Del Ray Civic Association, testified that the Association "wanted the Council to use the SUP as a means for prohibiting the sale of single containers of beer and wine in the Store." (¶ 34). The Council granted plaintiffs a SUP with that condition. (¶ 35). The SUP had to be periodically renewed.

At a renewal hearing on March 2, 1993, the City Council voted to renew the SUP. (¶ 38). However, on March 20, 1993, the City Attorney advised the City Council that the Council lacked the authority to regulate the sale of alcohol. Plaintiffs claim that despite that legal opinion, the Council refused to change the SUP on plaintiff's property. (¶ 40–41).

## II

In Count VIII plaintiffs allege that all defendants, including Kuckro and the Association, intentionally violated their civil rights while acting under color of law because defendants "knew or should have known that the Council lacked the authority to regulate the sale of alcoholic beverages of the Store." Count IX alleges a conspiracy among all defendants "to use the color of law as a means of changing the racial and economic composition of the neighborhood" and "to discriminate against the Black and low income patrons of the Store." Plaintiffs seek injunctive relief from the zoning restrictions, attorneys fees and monetary damages.

In his March 24, 1994, answer, Kuckro admits being "active in an effort to cause all area merchants to stop selling single beers and fortified wine," and does not dispute that he testified before the Planning Commission in support of the SUP. He argues, however, that his conduct is clearly protected by the First Amendment to the United States Constitution. The Association responded on April 6, 1994, with a Motion to Dismiss, in which it raised statute of limitations issues, in addition to attacking plaintiffs' cause of action.

## III

The essence of the defendants' motions to dismiss is the right guaranteed to all citizens to petition their government. The Association is one of forty neighborhood civic associations within the City of Alexandria. These associations have historically played an important role in the civic life of the city by, among other activities, representing the concerns of local neighborhoods before city government agencies and providing testimony about proposed government actions that might affect their neighborhoods. These associations, and their individual officers like Mr. Kuckro, have limited financial resources. Thus, defendants argue, being sued, with the accompanying expenses necessitated by hiring counsel, poses a serious threat to the existence of such associations and the willingness of citizens to take leadership roles within them. Defense counsel have advised the Court that other neighborhood associations have already expressed reluctance to speak publicly on controversial issues because of this lawsuit.

■ Defendants rely upon a line of cases which have consistently held that individual citizens and private organizations are immune from liability associated with their petitioning of governmental bodies. *See, e.g. City of Columbia v. Omni Outdoor Advertising, Inc.,* 499 U.S. 365, 366, 111 S.Ct. 1344, 1346–47, 113 L.Ed.2d 382 (1991). This principle has been applied to neighborhood associations in a factual setting almost identical to the one before this Court. In *Christian Gospel Church, Inc. v. San Francisco,* 896 F.2d 1221 (9th Cir.), *cert. denied,* 498 U.S. 999, 111 S.Ct. 559, 112 L.Ed.2d 565 (1990), a neighborhood civic association lobbied a local planning commission to deny a use permit to the plaintiff church. The church, like the Gibsons, sued the city planning and zoning commissions and other governmental entities, as well as the neighborhood association and one of its individual members, for violating the church's civil rights. In rejecting this cause of action, the Ninth Circuit noted that the neighborhood association was "doing what citizens should be encouraged to do, taking an active role in the decisions of government." *Id.* at 1226. This right to petition is so important to our system of government that the courts have shielded citizens from liability even when the position promoted was wrongful. *Eaton v. Newport Bd. of Educ.,* 975 F.2d 292, 298 (6th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2459, 124 L.Ed.2d 674 (1993) (libelous petitioning of school board to remove principal protected by First Amendment); *Oregon Natural Resources Council v. Mohla,* 944 F.2d 531 (9th Cir.1991) (wrongfully opposing commercial logging before regulatory body immune from suit); *In re IBP Confidential Business Docs. Litig.,* 755 F.2d 1300 (8th Cir.1985) (allegedly libelous submission to congressional subcommittee protected).

Plaintiffs failed to respond to the significant First Amendment issue raised by their lawsuit. Rather, they argued, based on *United Steelworkers of America v. Phelps Dodge Corp.,* 865 F.2d 1539 (9th Cir.) (*en banc*), *cert. denied,* 493 U.S. 809, 110 S.Ct.

51, 107 L.Ed.2d 20 (1989), that civil rights actions may be brought against private groups who "act under color of state law" by engaging in activities with governmental officers. That general principle of civil rights law is correct and was not contested by defendants. However, plaintiffs totally missed the crucial constitutional argument raised by defendants.

■ The Court finds that plaintiffs sued defendants Kuckro and the Association for expressing their viewpoints before governmental bodies and lobbying for governmental action. These First Amendment activities are at the heart of our representative form of government, and are subject to broad protection. To permit lawsuits of this kind to go forward would strike a devastating blow to citizens' willingness to express their views publicly or to lobby their government.

For these reasons, defendants' motions to dismiss are GRANTED.

## IV

■ Under 42 U.S.C. § 1988, a prevailing party in a civil rights action is entitled to "a reasonable attorney's fee as part of the costs." Where a plaintiff files a frivolous and vexatious civil rights action, a defendant is deemed the prevailing party. *Lopez v. Aransas County Independent School Dist.,* 570 F.2d 541 (5th Cir.1978). Such fees are paid by the party, not counsel. However, in this lawsuit there is such a tortured history of misconduct by plaintiffs' counsel that under Virginia Code § 8.01–271.1 and Fed.R.Civ.P. 11 sanctions against plaintiffs' counsel are also appropriate. A full description of counsel's behavior is necessary at this point.

On March 24, 1994, along with his petition for removal, Kuckro's counsel, an experienced practitioner specializing in plaintiffs' civil rights cases, sent plaintiffs' counsel a three-page letter in which he explained the Association's non-racially motivated opposition to plaintiffs' sale of single-container beer and fortified wine. He also cautioned plaintiffs' counsel that the lawsuit was frivolous as to Kuckro and the Association and that she could face sanctions under Code of Virginia § 8.01–271.1 and Fed.R.Civ.P. 11(b), as well as an award of attorneys' fees under 42 U.S.C. § 1988, if she and her clients did not agree to dismiss these two defendants from the lawsuit. Counsel extended plaintiffs ten days in which to dismiss and avoid any claims for sanctions or attorneys' fees. Plaintiffs' counsel failed to respond in any respect to that letter.

Kuckro's counsel sent a second letter on April 4, 1994, again asking plaintiffs to dismiss. He alerted plaintiffs to the First Amendment defense and warned her that plaintiffs' lawsuit "is necessarily incompatible with the premise that citizens are free to state their views to their government on matters of public interest." Plaintiffs were extended another ten days in which to dismiss without incurring sanctions or a request for attorneys fees. Plaintiffs' counsel again did not respond.

Kuckro's counsel sent a third and last letter on April 15, 1994. In this letter, he chastised plaintiffs' counsel for refusing to consent to Kuckro's motion to amend his answer, thereby necessitating a court hearing on the motion, at which plaintiffs' counsel did not even bother to appear. He also provided counsel with the holdings of and citations for six federal cases which held that the First Amendment confers absolute immunity on citizens who petition their government, and stated that he was unaware of any authority to the contrary. Plaintiffs were given, for the third time, ten days in which to dismiss and still avoid sanctions and attorneys' fees. Plaintiffs' counsel for the third time failed to respond to the letter in any respect. Kuckro then filed his Motion to Dismiss on April 29, 1994, and a Motion for Award of Costs on May 6, 1994.

The Association's Motion to Dismiss was filed on April 6, 1994, but, at plaintiffs' request, was continued to May 13, 1993, for argument. At the hearing, the Association's counsel represented that she had made numerous telephone calls to plaintiffs' counsel, who had failed to return them.

Despite the serious First Amendment issues raised in defendants' motions to dismiss and the extension of time granted plaintiffs to respond to these motions, plaintiffs did not file their response until May 12, 1994, one

day before the hearing. In that brief, they failed to address the First Amendment issue in any respect.

Plaintiffs' counsel had been on notice for over twenty-one days that her clients' lawsuit was frivolous and that she and they faced Rule 11 sanctions if they persisted in suing defendants. However, during oral argument of the motion to dismiss, plaintiffs' counsel continued to ignore the First Amendment issue and argued law that was irrelevant.

■■■ Plaintiffs' counsel's only explanation for her conduct was that this was her first civil rights case. However, being inexperienced is no excuse for her conduct. The Virginia Code of Professional Responsibility DR 6–101 mandates that an attorney undertake representation "only in matters for which: 1) the lawyer can act with competence and demonstrate the specific legal knowledge, skill, efficiency and thoroughness in preparation employed in acceptable practice by lawyers undertaking similar matters." If a lawyer undertakes employment "beyond [her] competence," she should consider associating with counsel who is competent. EC 6–3.

■■■ In dealing with opposing counsel, a lawyer "should accede to reasonable requests regarding court proceedings ... waiver of procedural formalities, and similar matters which do not prejudice the rights of his client." EC 7–35. Counsel's refusal to agree to Kuckro's request to amend his answer was, at the very least, not in the spirit of EC 7–35. Her failure to respond to opposing counsel's three letters clearly violated EC 7–35's admonition that counsel follow local customs of courtesy or practice and be punctual in fulfilling professional commitments. This Court deems timely responses to opposing counsel's communications a professional commitment.

This pattern of unprofessional conduct resulted in unnecessary, but significant, attorneys' fees for these two defendants. Having reviewed their fee petitions, the Court finds that both the hourly rates and hours expended by defendants' counsel are reasonable and, therefore, awards as a sanction one-half of that total to be paid by plaintiff's counsel.

The other one-half is awarded against the plaintiffs under 42 U.S.C. § 1988.

The Clerk is directed to forward copies of this Memorandum Opinion to counsel of record and to plaintiffs individually.